No. 44,724

A. Henry Tager, *Appellant*, v. Sylvia E. Tager, *Appellee*.

(427 P. 2d 484)

Opinion filed May 13, 1967.

Marion W. Chipman, of Olathe, argued the cause, and Eugene T. Hackler, John Anderson, Jr., Wilson E. Speer, and Joseph N. Vader, all of Olathe, were with him on the briefs for the appellant.

W. C. Jones, of Olathe, argued the cause, and Howard E. Payne, Robert P. Anderson, Keith Martin, and H. Thomas Payne, all of Olathe, and Joseph S. Levy and Bernard D. Craig, both of Kansas City, Missouri, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is a divorce action. Plaintiff-husband has appealed from the judgment as it pertains to a separation and settlement agreement and from adverse rulings of the trial court on several post trial motions. Judgment was entered for defendant-wife on her cross-petition on December 23, 1965. The plaintiff was represented by counsel at the trial but offered no evidence. No complaint is made with respect to the divorce and child custody being granted to the defendant.

The parties were married November 30, 1958, and are parents of two minor children; namely, David Charles Tager, born April 29, 1960, and Michele Renee Tager, born April 25, 1963. Prior to the divorce the parties resided in Shawnee Mission, Johnson County, Kansas. Plaintiff is an attorney, practicing in Kansas City, Missouri, and has earned large sums of money from the practice of his profession and business investments.

In the spring of 1965, differences arose between the parties and resulted in a separation and settlement agreement entered into on May 18, 1965. The agreement was a comprehensive settlement of the affairs of the parties. It provided for repayment by plaintiff in

installments of a $10,000.00 loan made by defendant to plaintiff, and for a division of both personal and real property. Provision was made for custody of the children with defendant and visitation privileges of the plaintiff. Support for each child was provided for in the amount of $200 per month and also provision was made for medical and educational expense. The child support, medical and educational benefits were to terminate on the death of the husband, a child attaining the age of 22 years, or the marriage or death of a child. Support and maintenance for the wife was fixed at $3,000.00 per year in monthly installments of $250, to terminate upon the death of the husband or the remarriage or death of the wife. Plaintiff further agreed to continue in force a $50,000.00 life insurance policy on his life and payable to his wife in the event of his death. It was further provided that in the event he failed to maintain the full amount of such insurance then the full amount or such amount as not maintained should constitute a claim against the husband's estate. On remarriage or prior death of the wife, provision was made that the husband should have all rights in the policy. Further provision was made to continue in force insurance on the life of the husband for the benefit of each child in the amount of $50,000.00, or until each child attained the age of 25 years. The three life insurance policies mentioned were to be established by converting into separate policies a $150,000.00 life insurance policy which plaintiff had in force at the time of the agreement.

The agreement contained numerous other provisions and a supplemental letter of plaintiff, none of which are in serious controversy and therefore need not be recited.

On June 23, 1965, plaintiff filed a petition for divorce. On June 24, 1965, defendant filed an answer to plaintiff's petition and a cross-petition for divorce. In her cross-petition defendant asked for a divorce, permanent alimony, and custody of, and support for, the minor children. Defendant referred to the separation and settlement agreement in her cross-petition and asked, that in the event the evidence confirms that no misrepresentations or concealment of income or assets was made to her, that the court approve and merge said agreement in any decree granted in accordance with the laws of the State of Kansas.

According to the record nothing further took place until December 17, 1965, when defendant, through her attorney, filed an affidavit

and accusation in contempt. As a result a citation was issued directing plaintiff to appear before the court on December 21, 1965, to show cause why he should not be punished for contempt. Apparently the court had previously ordered plaintiff to submit a statement of assets and liabilities to the court and to pay attorneys' fees, as ordered by the court. These orders were not set out in the record.

The contempt matter came before the court on December 22, 1965, but the court stated that it had received a telegram from plaintiff stating that due to illness he would be unable to be at the scheduled hearing. The court held the matter of the contempt citation in abeyance until the time set for trial on December 23, 1965. The court specifically ordered and directed plaintiff to be present at that time.

On December 23, 1965, the case was called for trial by the court. The plaintiff was not present in person but was represented by counsel. The defendant in her testimony identified the agreement and it was admitted in evidence. She further testified:

"I understand from the conferences that we have had today, that my husband has agreed to settle this matter with me and I have agreed to settle it with him upon the basis of the agreement with certain changes."

The defendant offered in evidence certain exhibits consisting of plaintiff's income tax returns for the years 1958, 1959, 1960 and 1961. She also offered in evidence a record of plaintiff's bank deposits for the year 1965, up to September 9, 1965. In this connection the court made oral findings that plaintiff's income tax return for 1958 showed taxable income as $33,761.01, and that the return had been corrected by the Internal Revenue Service to show taxable income as $63,932.18. That the plaintiff's income tax return for 1959 showed his taxable income as $58,256.49, and that it had been corrected by the Internal Revenue Service to show his taxable income was $95,-400.46. That plaintiff's 1960 income tax return showed his taxable income as $24,871.52, and has been corrected by the Internal Revenue Service to show his taxable income as $140,353.91. That plaintiff's income tax return for 1961 showed his taxable income as $53,139.51, and that the return had been corrected by the Internal Revenue Service to show his taxable income as $70,649.30.

A calculation, based on the court's findings in this regard, discloses that plaintiff's income for the years mentioned amounted to over $200,000.00 more than the income shown by plaintiff on his income tax returns.

The court approved the agreement with certain exceptions and changes. The most controversial change was an increase in the payments of support to defendant. In this connection the following appears in the journal entry:

". . . the Plaintiff is ordered and directed to pay support to the Defendant in the sum of $600.00 per month and such additional sums as may be necessary to satisfy any income tax liability on the basic payment of $600.00 for support, which additional sum is to be paid by the Plaintiff to the Defendant on or before the 1st day of January, the first day of April, the first day of July and the first day of October of each year hereafter until the further order of the Court, except, however, that the Plaintiff shall be required to pay to the Defendant for the first six months only the sum of $200.00 per month, plus such additional sums as may be necessary to satisfy income tax liabilities hereinbefore mentioned; that the provision for support is contingent upon the death of the Defendant and/or the remarriage of the Defendant or the death of the Plaintiff *as amending Paragraph 11 of said agreement by express agreement of the parties;* . . ." (Emphasis supplied.)

The substance of this change was an increase in monthly support payments to defendant from $250 to $600 with the exception that for the first six months payments were reduced to $200. Plaintiff was further ordered to pay defendant's attorneys' fees which were fixed in the amount of $5,000.00.

At the conclusion of defendant's evidence the court announced its findings. At this juncture defendant's counsel stated that Mr. Bronston, counsel for the plaintiff had examined defendant with reference to what plaintiff had agreed to. Defendant's counsel then asked Mr. Bronston to affirm that plaintiff had agreed to the changes made by the court. Plaintiff's counsel replied that Mr. Tager had agreed to the form recited from which contained the basic provisions but that he (Mr. Tager) was not in the conference, but he agreed to the previous agreement made. Plaintiff's counsel further stated that he did not have the authority to advise the court that the changes were in accordance with plaintiff's basic desires now.

Four days later, on December 27, 1965, plaintiff filed a motion to set aside the judgment. On December 29, 1965, plaintiff appeared in court for the first time and testified that at the time of the trial his liabilities far exceeded his assets; that he was advised by his attorney that if he appeared at the trial he would probably be thrown in jail; and that he would now like to have his day in court and present his evidence. The motion was overruled.

Thereafter, and on February 11, 1966, defendant filed a motion

and an affidavit for the examination of plaintiff as judgment debtor. On the same date defendant also filed an affidavit accusing plaintiff of contempt in failing to comply with the court's decree of December 23, 1965. In the affidavit defendant alleged that plaintiff had paid the sum of $400 in January and the sum of $200 in February of 1966, but refused to make the additional payments called for by the decree.

The court issued an order for the appearance of plaintiff as judgment debtor and a citation for his appearance in the contempt accusation. Both matters were set for hearing on February 11, 1966, at which time plaintiff appeared and testified. His testimony consisted of a lengthy list of debts owed by him, including what appears to be from the record an unsecured debt to a Chicago bank in an amount of $132,995.56, and an unsecured debt to a Niles, Illinois, bank in the amount of $30,000.00. Plaintiff testified that his total liabilities were in excess of over $400,000.00.

The proceedings were continued until February 16, 1966. On this date plaintiff testified and offered an exhibit reflecting his income and expenses for the year 1965. The exhibit showed a gross income of $118,500.00. The exhibit further reflected various business expenses of plaintiff, including an amount of $78,600.00 shown as "Share Paid to Client." The exhibit shows finally a net loss in the amount of $1,380.00 for the year 1965. The record fails to disclose the final outcome of the proceedings had on February 11 and 16, 1966.

On April 20, 1966, plaintiff filed a motion to reduce child support and alimony payments. It was stipulated by counsel that all of the evidence heretofore submitted in the case should be considered by the court. This motion was overruled.

In the meantime plaintiff filed two notices of appeal. The first was filed on January 18, 1966, and the second on March 3, 1966. Both notices designated an appeal from the orders of the court made on December 23 and 29, 1965. The defendant has challenged the right of plaintiff to be heard in this court but, after considering the somewhat confusing record, we have determined the appeal should be heard on its merits.

Plaintiff's principal contention on appeal is that the court erred in granting a judgment contrary to the agreement of the parties. He argues that under the provisions of K. S. A. 1965 Supp. 60-1610($d$) the agreement was not subject to subsequent modification

by the court except as the agreement itself may prescribe or the parties may subsequently consent, and that the changes had not been consented to by plaintiff.

Plaintiff is correct in his construction of the statute but he is not supported by the record in his claim that the changes were not consented to by him. In his motion to vacate judgment, filed four days after the trial, plaintiff admits that he entered into an oral divorce settlement but claims that he was coerced into such oral agreement by fear of a jail sentence for contempt. At the hearing on the motion to vacate judgment on December 29, 1965, plaintiff testified at one point that he did not agree to the judgment as it was entered by the court, but later testified that he would have probably agreed to an amount three times as much to get the matter settled. On this occasion plaintiff also admitted that he was in telephone communication with his attorney the morning of the trial and discussed a settlement of the changes demanded by defendant.

In her testimony at the trial, which we have quoted, defendant referred to the conferences that day and to her understanding that her husband had agreed to settle upon the basis of the agreement with certain changes. It is manifest, from the record and particularly from the manner in which the findings as to the changes to be made in the agreement were announced, that the trial court was acting on the premise that the changes had been agreed to by plaintiff. With reference to the change in the amount of support payments to the defendant, provided for in Paragraph 11 of the agreement, the journal entry specifically relates that the paragraph in question was amended by express agreement of the parties. In view of the facts which we have recited, we are not in a position to dispute the trial court's finding on this point.

It has been stated many times that it is not the function of this court to weigh conflicting evidence or to substitute its judgment for that of the trial judge, who heard and saw the parties. This advantage enabled him to judge more fairly and accurately than this court the credibility and probative value of their testimony. (*Zeller v. Zeller*, 195 Kan. 452, 407 P. 2d 478; *Preston v. Preston*, 193 Kan. 379, 394 P. 2d 43; *Hoppe v. Hoppe*, 181 Kan. 428, 312 P. 2d 215.)

Plaintiff next asserts the trial court erred in ordering a division of the property of the parties, alimony and child support payments,

without evidence of plaintiff's financial worth or earnings. Plaintiff appears to have taken inconsistent positions in this regard. In his argument as to his first contention plaintiff submits that the agreement was fair, just and equitable and should not have been changed as to the alimony payments to defendant and now on this point he contends the court had no evidence of plaintiff's financial worth or earnings. The court approved the agreement of the parties with the exceptions, made as a result of the oral agreement of the parties, and those matters which the court found not to be properly included in the agreement, such as the provision for arbitration, attorneys' fees and other matters which must by law be left to determination by the court. Provisions as to custody and support of the two minor children were approved subject to the further order of the court.

Since the judgment here, as to the matters in controversy, was based on an agreement of the parties, it could have been properly arrived at without detailed evidence of plaintiff's financial worth or earnings. However, the evidence submitted by defendant at the trial consisting of her testimony, the exhibits reflecting plaintiff's income and tax returns for several years, and his income for a substantial part of 1965 was adequate to substantiate the court's judgment. The court was aware of plaintiff's earning capacity, as reflected by his income tax returns for prior years. When the court later heard plaintiff's testimony on December 29, 1965, as to his financial predicament it could have vacated the judgment or reduced the child support payments after considereing the evidence in this connection on April 20, 1966. It appears the trial court refused to believe the uncorroborated testimony of plaintiff as to his dire financial straits. Here, again plaintiff would have us substitute our judgment for that of the trial court. As we have stated such is not the function of this court on appeal.

The judgment is affirmed.