No. 45,361

Nancy Perry Tyler, *Appellee*, v. Daniel Waldo Tyler, *Appellant.*

(455 P. 2d 538)

Opinion filed June 14, 1969.

*Warren W. Shaw,* of Topeka, argued the cause, and *Hugh H. Kreamer,* of Olathe, and *George Miskovsky* and *John Embry,* both of Oklahoma City, Okla., were with him on the brief for the appellant.

*Willard B. Thompson,* of Wichita, argued the cause, and *Hugo T. Wedell, Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Robert T. Cornwell, David W. Buxton, John T. Conlee, John Prather, Richard I. Stephenson,* and *Douglas D. Johnson,* all of Wichita, and *John J. Gardner,* of Olathe, were with him on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: This appeal is from a post-divorce allowance of

increased child support payments together with attorney fees for obtaining the increase.

The appellee, Nancy Perry Shaw, formerly Nancy Perry Tyler, and the appellant, Daniel Waldo Tyler, who were married in 1953, were divorced October 21, 1959, in the district court of Johnson county, Kansas. They were the parents of two children, Frank Waldo and Lisa, then aged four and two years, respectively. The divorce decree approved a property settlement agreement entered into by the parties and, subject to further order of the court, ordered support money to be paid by appellant in accord with the agreement, that is, the sum of $150.00 per month for each child; when each child entered high school the payments were to be $200.00 per month and when each child entered college the monthly payments were to be increased to $250.00; additionally appellant was to pay medical and dental expenses for each child in excess of $200.00 annually, and tuition, room and board for a child attending a private school or a college located outside the greater Kansas City area. The divorce decree approved an irrevocable trust agreement established by appellant for the benefit of the children which was provided for in the property settlement agreement, and it also recited the trial court retained jurisdiction of the matter of support of the children during the minority of each. The property settlement agreement also provided that appellee receive the sum of $160,000 in cash, wedding gifts and, as alimony, the sum of $1,250 per month during her lifetime or until remarried.

Appellee remarried in December, 1961. She and the two children, and another child born as a result of her marriage to Mr. Shaw, have since resided in Wichita. Appellant has also remarried, as a result of which he has a natural born child and two adopted children.

February 16, 1967, appellee filed her application in the trial court for increased monthly child support payments to be made by appellant, requesting the sum of $500.00 for each child. Appellant resisted this application. The trial court heard evidence and on October 30, 1967, ordered appellant to pay $400.00 per month support for each child, and also, as part of the costs, the sum of $2,000 for attorney fees for appellee's counsel. Appeal is from these orders.

The trial court made findings of fact including the following:

"5. At the time of the divorce of the parties, the minor children were age

two and four, and were the only children in the home. The parties and the two minor children lived at 3117 West 68th Street, Mission Hills, Kansas. The home had approximately 4,500 square feet in it situated on extensive grounds, and had a 35-foot living room and lovely bedrooms and bathrooms for the children. At that time, the parties belonged to the Mission Hills Country Club, the Saddle and Sirloin Club, and the River Club. The house in which the parties lived, and furnishings therein, were valued by the two of them at $160,000.00. This was the figure used in the divorce proceedings to obtain Plaintiff's $160,000.00 cash settlement while Mr. Tyler received the home and all furnishings, fixtures and household goods situated therein except Plaintiff's personal effects and certain wedding gifts. With the settlement money of $160,000.00, Plaintiff bought and furnished a $45,000.00 house on 70th Terrace, Johnson County, Kansas, for herself and the minor children. The balance was invested in municipal bonds.

"The Tyler family traditionally lived a relatively formal life. Plaintiff and Defendant spent about $5,000.00 annually to pay for a nurse-maid and other help. Plaintiff and Defendant constantly had a nurse-maid for the children.

"Defendant and Plaintiff took numerous trips during their marriage. Their honeymoon was in Hawaii and they went to Nassau and went on a Caribbean cruise and were guests on General Sarnoff's yacht, to name a few.

"During their marriage, Defendant purchased a great deal of jewelry for Plaintiff, totaling about $70,000.00, $35,000.00 of which Plaintiff returned to the jewelry company and would not accept. The children had everything in the way of clothing, toys, and anything else they wanted. Their clothing was the finest. The children went to Barstow summer camp. Mr. Tyler always wanted the best and enjoyed the best. He drove Cadillac automobiles and always wore custom made suits.

"6. The adjusted gross income of the parties, for federal income tax purposes, during the year of divorce, 1959, was as follows:

"Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $8,610.14
"Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . $54,700.00

"The adjusted gross income of each of the respective parties during the year 1965 as reported for federal income tax purposes, was as follows:

"Plaintiff—$5,868.75

"(Gross income for year, including tax exempt municipal securities income, etc., was $7,413.55.)

"Defendant—$87,285.00

"(Gross income for year, including tax exempt municipal securities income, etc., was $104,613.00.)

"Mr. Tyler's income as disclosed by his tax returns is derived not from any salary but solely from stocks, bonds, investments and trusts.

"8. An unaudited and unverified balance sheet submitted by Defendant as of February 26, 1959, disclosed Defendant's net worth to be $1,402,164.00. An unaudited and unverified balance sheet submitted by Defendant as of August 31, 1965, disclosed Defendant's net worth to be $1,448,554.58.

"9. Plaintiff acquired a residence with her own funds in 1962 in Wichita for $45,000.00, which property is now subject to a mortgage in the approximate amount of $23,000.00.

"14. Since October of 1959, the date of divorce, the Defendant has paid a total of $300.00 for medical and dental expenses for the children, all other medical and dental expenses having been paid by plaintiff. Each of the minor children went to a private school in Wichita for a year and a half after Plaintiff moved to Wichita. Thereafter, the minor children have been in public schools with the exception of Lisa, who went to a private school for the school year commencing in September, 1966. Defendant has paid the tuition to private schools, but has refused to pay for text books, lunches, and bus transportation. He has also refused to pay $150.00 for special therapy for Frank at the Institute of Logopedics, a special therapy and correctional institution in Wichita.

"15. The children are very active, energetic children and participate in many activities and athletics. The only real vacation the children have had before and since Plaintiff's marriage to Mr. Shaw has been a trip to Hawaii taken in the summer of 1965. This trip was financed by the proceeds of sale of some stock Plaintiff held in Martin-Marietta Corporation and Lear Jet.

"16. Defendant had been around the world by the time he was a teenager and had gone to camp every year and had been to Hawaii on vacation with his family. When Plaintiff was a child she always went to summer camp.

"17. The Property Settlement Agreement hereinabove referred to provided for the creation and establishment of an Irrevocable Trust for each of the two children and on the 11th day of August, 1959, such a trust was established with the Commerce Trust Company. A copy of such trust has been admitted into evidence and is referred to by reference herein. At the time the trust was executed on the 11th day of August, 1959, the sum of $100.00 was transferred to it and that remained the only asset of the trust until February of 1962, several months after the remarriage of Mrs. Shaw, when securities in Martin-Marietta Corporation having a value of approximately $249,900 were transferred and deposited into the trust. The present value of the corpus and accumulated income of such trust is $231,530.91.

"18. In August of 1959, the Defendant was required to establish an escrow account at the Commerce Trust Company, Kansas City, Missouri, consisting of securities which would secure the performance by the Defendant of obligations imposed upon him in the Property Settlement Agreement of the 11th day of August, 1959. Capital stock in Martin-Marietta Corporation valued at approximately $249,900.00 was transferred from such escrow account at Commerce Trust Company to the Irrevocable Trust for the benefit of the children, in February, 1962. In February of 1967, the Defendant withdrew from said escrow account securities having a value of more than $300,000.00. At the present time, this escrow account consists of securities having a value of approximately $50,000.00.

"19. Only one discretionary distribution has been made from said trust, that in the amount of $375.00, to send Frank to camp during the summer of 1966, which distribution was requested by Waldo E. Tyler, grandfather of the minor children, without Plaintiff's knowledge.

"20. At no time has Plaintiff requested a distribution from the trust for the benefit of the children. The income from the trust in 1966 was $7,188.74. Considering the accumulated income of the trust for five years and three months,

the trust estate has suffered an attrition of $19,000.00, with only one distribution in the amount of $375.00 as aforesaid. Mr. Vernon Kassebaum, an attorney in Kansas City, Missouri, had contacted the Commerce Trust Company, Trustee, in 1965, as counsel for Plaintiff, the mother of the children, to see what could be done to produce some appreciation in the trust.

"21. Plaintiff has always known that she could apply for a discretionary distribution from the Commerce Trust Company for the benefit of the children, but she has declined to attempt this for the reason that she considers the trusts as an 'inheritance' for the children. Plaintiff did not know the $375.00 distribution was an invasion of the trust.

"22. This Court cannot make an order herein which is binding on the Trustee of said trusts to make or not to make a discretionary distribution.

"23. From all of the testimony herein, and the circumstances involving the divorce, said trusts were in fact created chiefly and principally to provide the children with an estate of their own and not to provide the children with current support. The trusts were created at the insistence of Plaintiff, mother of the minor children. . . .

"24. The cost of living has risen since the divorce in 1959, and the cost of supporting and maintaining children 10 and 12 years old (now) is greater than supporting children 2 and 4 years old (at time of divorce).

"25. The sum of $150.00 per month support is inadequate for the current maintenance and support of the children, and the Defendant is financially able to contribute substantially more to their support."

Additionally, the trial court made findings as to amounts of capital expenditures made by appellee for the benefit of her family, living expenses allocable to each member thereof, and specifically found appellee had expended for the support and maintenance of Frank and Lisa the sum of $523.85 each per month, and it made the following conclusions of law:

"1. The child support and other payments concerning which Defendant is obligated to pay for the benefit of the minor children, are insufficient. On the basis of the facts and evidence, Defendant should be ordered to pay Plaintiff the additional sum of [$250.00] per month for child support for each child . . . commencing with the month of June, 1967, until further order of this Court. All other provisions set forth in the Property Settlement Agreement relating to the minor children shall remain the same. The Defendant is financially able to make such increased support payments.

"2. The minor children are entitled to be raised in substantially the same environment and station of life as they would have enjoyed had their parents continued living together.

"3. It is obligatory upon the Commerce Trust Company, Trustee of the trusts dated August 11, 1959, in considering whether or not a discretionary distribution should be made to or for the benefit of the minor children herein, to consider whether or not Defendant, the children's father, who is primarily responsible for their support, has income and resources separate and apart from the trusts which are 'available' for the support of said children, and, if so, to

refrain from making a distribution. Creation of such trusts did not forever expunge the right of the minor children to seek an increase in child support from their father. This is further evidenced by this Court finding in its decree of divorce that provisions pertaining to support of the minor children would be subject to further order of this Court. Such trusts were set up chiefly and principally for the purpose of providing an estate for these minor children, and the mother of these minor children, mindful of their future welfare, has treated such trust in light of such purpose. The existence of these trusts, which have suffered an attrition in value after considering accumulated income for five years and three months, of $19,000.00 since their creation (despite a contention by counsel for Defendant that the trusts by attainment of majority of the childen should be worth a half million dollars), should not be material in this cause in light of the substantial income and wealth of the Defendant, whose resources are 'available' for the benefit and support of the minor beneficiaries as their father.

"4. The minor children are not precluded from attaining an increase in child support payments by their father simply indicating to the Court as his counsel has done in this case that Defendant is willing that all of the income of the trust may be used for the benefit and support of these minor children. The Trustee of the trust is not bound by order of this Court relative to distribution of funds from the trust. If the mother of these children would have requested and received a distribution of income from the trusts, then the trusts would now be worth approximately $190,000, some $60,000 less than the original value of the trusts created over five years ago."

Appellant contends the trial court abused its discretion in ordering him to pay $250.00 per month additional support money without requiring appellee first to resort to the trust fund for such increase. He argues the trust fund was established to provide support for the children and was, under its terms, available for their support during their minority. This contention requires a closer look at the trust agreement. Funds came into it by reason of the following proviso in the parties' property settlement agreement:

"Second Party [appellant] hereby agrees that either [1] upon the death of First Party [appellee], or [2] the marriage of First Party, or [3] as soon as there is no living child of First and Second Parties who is younger than twenty-one (21) years of age, whichever first occurs, he will transfer and deliver, or cause to be transferred and delivered, cash or securities having a then market value of two Hundred and Fifty Thousand Dollars ($250,000.00) to Commerce Trust Company, Trustee under the Trust Indenture dated 11th day of August, 1959, a copy of which is attached hereto and by reference is made a part hereof."

The trust agreement itself first recited that appellant, the settlor, had deposited with the trustee, The Commerce Trust Company, the sum of $100.00 to be held by it under the terms of the agreement,

along with all other property coming into the trust estate. In pertinent part the trust agreement then provided:

"B. Either [1] upon the death of NANCY P. TYLER, if she should not remarry, or [2] upon her remarriage if she should remarry, or [3] as soon as there is no living child born of the settlor's marriage with NANCY P. TYLER who is younger than twenty-one (21) years of age, whichever first occurs, the trustee shall divide all of the property then constituting the trust estate into two equal shares. One of said shares shall be named for the settlor's son, FRANK WALDO TYLER, and shall be designated as the 'Frank Waldo Tyler Share', and the other of said shares shall be named for the settlor's daughter, LISA TYLER, and shall be designated as the 'Lisa Tyler Share'. Each of said shares shall be held, administered and distributed as follows:

"(1) In the event any payment should be made to the trustee by the settlor to carry out his obligation to make certain payments for the support of his children or the education of his children or for the medical and dental expenses of his children, all pursuant to a certain property settlement agreement between the settlor and NANCY P. TYLER dated August 11, 1959, then the trustee shall immediately pay to the beneficiary for whom said share is named any payment made by the settlor to the trustee for the support of said beneficiary, and the trustee shall immediately pay to or use for the benefit of said beneficiary any payment made by the settlor to the trustee for the education of said beneficiary or for the medical and dental expenses of said beneficiary. In no event shall any payment made by the settlor to the trustee under this subparagraph (1) be retained in trust by the trustee.

"(2) If the beneficiary for whom said share is named is younger than twenty-one (21) years of age at the time said share is to be set aside then until said beneficiary attains the age of twenty-one (21) years (or until the death of said beneficiary if he or she should die prior to attaining said age) the trustee shall pay to or use for the benefit of said beneficiary as much of the net income derived from said share as the trustee may deem necessary or proper for the comfortable maintenance, support, education and general welfare of said beneficiary, taking into consideration any other resources available to said beneficiary of which the trustee has actual knowledge. Any net income not so paid to or used for the benefit of said beneficiary shall be added to the principal of said share at such times as the trustee may deem appropriate; provided, however, that at the time said beneficiary attains the age of twenty-one (21) years any collected but undistributed net income shall immediately be added to the principal of said share, and any accrued but uncollected net income shall be treated as income derived from said share after said beneficiary attains the age of twenty-one (21) years.

"(3) From the time the beneficiary for whom said share is named attains the age of twenty-one (21) years (or from the time said share is to be set aside if said beneficiary has then already attained said age) until said beneficiary attains the age of forty (40) years (or until the death of said beneficiary if he or she should die prior to attaining said age) the trustee shall pay to said beneficiary, at convenient intervals but not less frequently than quarter annually, all of the net income derived from said share."

Further provisions directed fractional parts of the principal of each share to be paid each beneficiary upon attainment of age twenty-five, thirty, and thirty-five years, with final distribution and termination of the trust at age forty. Provision was also made for disposition of the fund in event of death of either beneficiary. The trustee was authorized in its discretion to invade the principal if deemed necessary to carry out the provisions of the trust and was directed "to be liberal in its exercise of said power." The trust agreement was made irrevocable as to appellant.

Appellant directs particular attention to the first sentence in subparagraph B(2) of the instrument directing that during the minority of each beneficiary the trustee shall pay over such amount of income as it may deem necessary for the maintenance and support of such beneficiary "taking into consideration any other resources available to said beneficiary of which the trustee has actual knowledge." He argues the language of the trust agreement explicitly and clearly shows it was created to provide support for the children during their minority and that it is inequitable and an abuse of discretion on the part of the trial court to require him to pay additional support money rather than look to the trust fund for such increase. He says that parties can by contract provide for the discharge of their obligation for support of their minor children.

Appellant's position cannot be sustained.

Any provision in a separation agreement entered into by the parties for the custody, support or education of their minor children remains subject to the control of the district court (K. S. A. 1968 Supp. 60-1610 [*d*]). Subsequent to the decree in a divorce action, the district court, under K. S. A. 1968 Supp. 60-1610 (*a*), has a continuing discretion to modify or change an order therein made for support of minor children when facts and circumstances are shown which make such change or modification proper. These statutes accord with long prevailing doctrine that parents cannot, by agreement between themselves, deprive the courts of their inherent power to make such provision for the support of their minor children as the latter's welfare may require. Upon appeal a ruling of the district court increasing child support will not be disturbed unless there is a clear showing of abuse of discretion (*Grunder v. Grunder,* 186 Kan. 766, 352 P. 2d 1067; *Herzmark v. Herzmark,* 199 Kan. 48, 427 P. 2d 465). In *Allison v. Allison,* 188 Kan. 593, 363 P. 2d 795, the holding was:

"In a divorce action, where the welfare of minor children is involved, the trial court's power in dealing with the property of parents is necessarily very broad, and unless that power is obviously abused, its exercise will not be disturbed on appeal." (Syl. ¶ 4.)

The evidence before the trial court here consisted of the testimony of appellee, an officer of the trustee and a medical witness, and documents reflecting the parties' assets, expenses and income. Appellee testified and the trial court found *as a fact* that the trust was established chiefly to provide the children with estates of their own and not to provide for their current support (finding No. 23). Appellee testified as to motives and considerations prompting establishment of the trust fund, at her insistence and as a part of her contractual adjustment with appellant, so as to provide an inheritance for the children. No complaint is made here on the reception of this testimony, which apparently was uncontradicted, and it is entitled to its full import on the side of the trial court's ruling. The conclusion the trust fund was intended primarily to insure an inheritance is further buttressed by the fact that under the provisions of the trust agreement no funds were to come into it (except the nominal deposit of $100) until one of three events occurred: Appellee's death, her remarriage, or the attainment by the youngest child of the age of twenty-one years; hence, so long as appellee remained alive and single there was nothing in the trust fund from which support could be provided for either child during its minority. By her action, and at cost to herself, appellee has so interpreted the agreement. And appellant has always made the support money payments separately and apart from the trust fund, instead of using the optional method mentioned in subparagraph B(1) of the trust indenture. On the question of administration of the fund, the trust officer did testify the trustee would take into consideration any court order for support money for the children but it is manifest the trial court correctly ruled it could not make a binding order on the trustee with respect to its discretionary distribution. The trust officer's testimony that the trustee in determining whether to make distribution would not consider appellant's resources was purely a legal conclusion which the trial court was at liberty to disregard in reaching its decision. Noteworthy also is the fact that, at appellee's instance, a separate escrow account was required and established, in order to provide her security for appellant's performance of his obligations arising from the property settlement agreement (finding

No. 18). Although, being immaterial here, the terms of the escrow agreement are not included in the record before us, evidently, upon appellee's remarriage, appellant withdrew funds from the escrow account no longer necessary to secure alimony payments and placed them in the trust fund.

If appellant's interpretation of the purpose of the trust fund were correct, it would have been easy to have inserted in the agreement plain language to that effect. A simple statement as to purpose and a simple covenant that the funds therein must first be resorted to before any increase could be sought from appellant's resources would have sufficed. This would have been in sharp contrast to the broad language actually used—that in making any distribution during minority the trustee should take into account "any other resources" available.

Appellant also argues the result of the trial court's ruling is to compel him to create an estate out of his property to support minor children beyond their minority, which is prohibited. However, if that could be construed to be the effect of the order, we know of no rule making it invalid when based on an agreement entered into by the parent whose property is so taken (see *Hayn v. Hayn,* 162 Kan. 189, 175 P. 2d 127).

Here, the trial court made its approval of the property settlement agreement (of which the trust indenture was a part) and its initial allowance of support money subject to further order of the court and expressly retained jurisdiction for that purpose. The trial court had evidence as to the financial and social position of the parties and made specific factual findings as to expenses of the children. Appellant does not seriously contend the amount allowed was excessive either as to need or as to his ability to pay. The court found that appellee was making substantial contributions from her own resources toward the children's support. It also made factual findings as to the intent of the parties in establishing the trust fund which findings we may not ignore. In making its order the court was primarily concerned with the welfare of the two children as shown by the evidence. Everything considered, we cannot say the court's order was so inequitable as to amount to abuse of discretion.

The trial court also made an allowance of attorney fees for appellee's counsel. In *Herzmark v. Herzmark,* supra, it was pointed out that K. S. A. 1968 Supp. 60-1610 (*f*) vests a trial court with wide discretion in awarding attorney fees in proceedings for the modifi-

cation of an order respecting the care and support of minor children. The allowance here was substantiated by evidence as to time actually spent and services rendered, and we find it was properly within the sound discretion of the trial court.

The judgment is affirmed.

APPROVED BY THE COURT.

FONTRON, J., dissents.