No. 46,631

In the Matter of the Estate of John E. Sweeney, Deceased. VIRGINIA J. SWEENEY, *Appellant* and *Cross-Appellee* vs. MERCHANTS NA-TIONAL BANK OF TOPEKA, KANSAS, Executor and Testamentary Trustee of the Estate of John E. Sweeney, Deceased, *Appellee* and *Cross-Appellant*.

(500 P. 2d 56)

Opinion filed July 19, 1972.

*Robert Ochs*, of Fisher & Benfer, of Topeka, argued the cause, and *Charles S. Fisher, Jr.*, of the same firm, was with him on the brief for appellant and cross-appellee.

*Eugene W. Hiatt*, of Hiatt & Spurgeon, Chartered, of Topeka, argued the cause, and *Leland M. Spurgeon* and *Kenneth F. Crockett*, of the same firm were with him on the brief for appellee and cross-appelant.

The opinion of the court was delivered by

FATZER, C. J.: This appeal arises out of a claim for alimony and child support against a decedent's estate. The facts are not in dispute.

Following several years of marriage and the birth of five children, Virginia J. Sweeney sued John E. Sweeney for separate maintenance. Before the matter was heard, and on October 11, 1966, Virginia and John entered into what was characterized as a "stipulation" in which they stated they had been unable to reconcile their differences and believed that a permanent separation must ensue.

The stipulation is too extensive to be presented here in full. It is sufficient to say that Virginia agreed to amend her separate maintenance petition to the extent necessary to seek a divorce from John. The stipulation provided for (a) the division of all the real and personal property of the parties; (b) the custody, support and education of their minor children, and (c) the future support of Virginia, denominated as alimony.

On the same day, October 11, 1966, the district court permitted the petition for separate maintenance to be amended; granted a

divorce to Virginia; found the terms of the stipulation to be fair, just and equitable, approved the same, and ordered the stipulation be incorporated into the decree.

The stipulation contained 18 paragraphs which were written in full in the district court's decree of divorce as separate findings of the court, and were likewise written in full in separate paragraphs in the judgment portion of the decree. In the interest of brevity and to avoid repetition of quoting from the stipulation and the judgment portion of the decree, the various pertinent paragraphs of the stipulation, as well as the separate findings of the court incorporating such paragraphs into the decree, are quoted as follows:

"And now the court, having heard the testimony of plaintiff and her witness, and after hearing the statements of counsel, examining the files herein, and being well and fully advised in the premises, finds:

"3. The court further finds that plaintiff should be awarded, as and for her property settlement with defendant, free and clear from all right, title, interest, lien, claim or encumbrance of defendant, the following described real and personal property:

"a. $3500.00 cash

"b. The 1962 Buick station wagon

"c. The household goods and furnishings, including drapes, rugs, pictures and books located in the dwelling house where plaintiff resides at 812 Gage Blvd., Topeka, Kansas, except certain items of furniture and personal effects which the parties have agreed should be awarded to defendant, said articles being more particularly described in findings No. 13 and No. 14 following

"d. The real estate commonly known as 812 Gage Blvd., Topeka, Kansas, more particularly described as follows: (description.)

"6. The court further finds that plaintiff should be awarded for her future support and maintenance, to be denominated as alimony, the sum of $650.00 per month, payable by defendant to plaintiff through the Clerk of the above entitled District Court, commencing $650.00 on January 1, 1967, and $650.00 on the first day of each succeeding month until plaintiff's remarriage or death, in either of which event said support payments shall cease and terminate.

"7. The court further finds that defendant should pay plaintiff through the Clerk of the above entitled District Court for the support, maintenance and education of the minor children of the parties the sum of $100.00 per month per child, commencing January 1, 1967 and continuing on the first day of each succeeding month until each of said children shall have attained his majority or until the further order of the court.

"10. The court further finds that until January 1, 1967, or the effective date of the divorce decree, whichever is sooner, defendant should continue to pay plaintiff the sum of $650.00 per month, as well as the monthly mortgage installment on plaintiff's home, payable to the American Savings Association of Topeka; that defendant should also bring any delinquent payments to date in order that plaintiff will receive the said home commonly known as

812 Gage Boulevard, Topeka, Kansas, as of the effective date of the said decree, with no payments in arrears as of the said effective date; that the award to plaintiff of the said real estate should include all account balances reserved for the payment of ad valorem taxes, hazard insurance and mortgage insurance.

"12. The court further finds that defendant should keep in effect his Prudential Life Insurance policy No. 31199270, the proceeds of which are to be used, in case of defendant's death, for the payment of the unpaid balance on the present mortgage loan on said real estate, and will make all necessary changes.

"13. The court further finds that defendant should be awarded all his corporate stock in the Medical Building Company, Inc., his partnership interest in the Topeka Medical Center, together with his proportionate share of the reserves and accounts receivable in connection with said medical center, and should be awarded his life insurance policies, subject to the provision for the payment of the mortgage balance in the event of his death, as referred to in paragraph 12 above, all of said interests to be awarded him free and clear of any right, title, interest, lien, claim or encumbrance of plaintiff."

The journal entry was filed of record as of January 11, 1967. Virginia was awarded the care, custody and control of the minor children. On March 5, 1970, when the proceedings out of which this appeal arises were commenced, there were three minor children in the home—Craig, born April 7, 1951; Michael, born December 18, 1954, and Mary Catherine, born December 2, 1961.

Virginia has not remarried; she was 50 years of age on December 2, 1969, and is in good health.

Sometime after the divorce, and on a date not disclosed by the record, John married Martha Maynard Sweeney, his surviving spouse, hereafter referred to as Martha.

On July 23, 1969, John executed his Last Will and Testament in which he directed his executor to pay all his debts, including funeral expenses and all federal and state inheritance taxes; he bequeathed all of his household goods, wearing apparel, and his automobile to Martha. He devised the residue and remainder of his estate to the Merchants National Bank of Topeka, hereafter referred to as the bank, the executor, or the trustee, in trust for Martha's benefit during her lifetime, then to his children. The bank was named executor of John's estate, and was also named Testamentary Trustee in his will.

No other instrument or document setting forth the terms of the trust (other than a will) had been executed before, or concurrently with, the execution of John's Last Will and Testament.

John held two insurance policies on his life; one in the amount of

$40,000 with the Security Benefit Life Insurance Company, and one for $5,000 with the Topeka Medical Center Self Employment Retirement Trust. Both policies designated as the beneficiary the bank as trustee of the testamentary trust created by John's Last Will and Testament.

On November 15, 1969, John died suddenly and unexpectedly, leaving Martha as his surviving spouse. As indicated, three of his children were still minors.

John's Last Will and Testament was duly probated, and on December 29, 1969, letters testamentary were issued to the bank as executor in Case No. 32,754 (the probate estate). On January 12, 1970, letters testamentary trustee were issued to the bank in Case No. 32,754A (the trust estate).

On March 5, 1970, Virginia filed a petition for allowance of demand (K. S. A. 59-2237) on behalf of herself, asserting a contractual claim for future alimony for a life expectancy of 21 years at $650 per month by virtue of the stipulation and the decree of divorce.

The prayer was as follows:

"WHEREFORE, your petitioner prays that her demand against said estate under said contract be allowed at the present value thereof in the amount of $171,600, and that the Court order the executor to retain in its hands sufficient funds to the extent of at least $171,600 to satisfy the payments under said contract as they mature, and that this claim be assigned as a claim of the fourth class."

All alimony payments under the stipulation and the decree of divorce were paid in full up to November 1, 1969.

On April 8, 1970, Virginia filed a petition for allowance of demand, on behalf of the minor children, asserting a contractual claim of child support by virtue of the stipulation and the divorce decree. The prayer was:

"WHEREFORE, your petitioner prays that her demand against said estate under said contract be allowed at the present value thereof in the amount of $26,950.00, as well as $600.00 in arrearages, payable immediately, and that the Court order the executor to retain in its hand sufficient funds to the extent of at least $27,550.00 to satisfy the payments under said contract as they mature, and that this claim be assigned as a claim of the fourth class."

The claim for the $600 in arrearage was not disputed.

The bank, as executor and as trustee of the testamentary trust, filed corrected inventories in both estates, listing the insurance policies heretofore referred to in the total amount of $45,000 as assets of the trust estate.

On April 20, 1970, Virginia filed a third petition to correct the inventory of the probate estate (K. S. A. 59-1201), seeking to have the two insurance policies made a part of the corpus of the probate estate. We quote from the petition insofar as here material:

"THIRD: That said inventory and appraisal does not contain the following described personal property, to-wit: a $40,000.00 Life Insurance Policy Security Benefit Life No. GL932 Cert. 55 (12-10-70 E. M. V.), payable to his testamentary trustee and $5,000.00 representing proceeds of Topeka Medical Center Self Employed Retirement Trust (also life insurance).

"FOURTH: That the said decedent at the time of his death was the owner of said personal property and that the same should be included in the inventory and appraisal of the said decedent's estate."

It should be noted that Virginia never challenged the validity of the testamentary trust established by John's Last Will and Testament, other than seeking to have the proceeds from both insurance policies placed in the probate estate as assets to pay her claims for alimony and child support in the event those claims were sustained.

All three petitions were filed in Case No. 32,754 (the probate estate) and were transferred from the probate court to the district court pursuant to K. S. A. 59-2402a and 59-2402b, for hearing and determination. At the conclusion of the hearing, the district court entered judgment that:

"1. The claims of Virginia J. Sweeney for alimony and child support are valid claims against the estate of John E. Sweeney, deceased, by virtue of the contractual agreement between claimant and decedent.

"2. The executor should retain in his hands such sums as are necessary to carry out the terms of the agreement within the limitations of said estate.

"3. That the claimant shall have judgment immediately on the sums due to date by virtue of the contractual agreement between claimant and decedent, to-wit: $14,300.00 plus $750.75 interest of the alimony and $7,200.00 plus $420.00 interest of the child support.

"4. The Petition to Correct Inventory is denied.

"5. That the executor should carry out the terms of the Last Will and Testament of the deceased with regard to the trust.

"The costs of this action will be taxed to the estate."

Virginia perfected an appeal to this court, designating her points on appeal as follows:

"1. The Trial Court erred in holding that the decedent set up a valid trust in his Last Will and Testament."

The bank as executor cross-appealed, and its statement of points reads:

"1. The Trial Court erred in holding that the claims of Virginia J. Sweeney for alimony and child support are valid claims against the estate of John E. Sweeney, deceased.

"2. The Trial Court erred after holding that the child support was a valid claim against the estate of John E. Sweeney, deceased, by then not allowing the estate credit for the Social Security and Veterans Administration benefit payments received by Virginia J. Sweeney on behalf of the surviving children of John E. Sweeney, deceased."

We first turn to the cross-appellant's contention the district court erred in holding Virginia's petitions for allowance of alimony and child support were valid claims against John's estate. If the contention is correct, the other issue raised will become moot or immaterial.

The bank, as executor, makes two contentions. First, that under K. S. A. 1971 Supp. 60-1610 (d), the stipulation was merged into the divorce decree and each alimony payment became a judgment when due; that after the decree, there was no contract for a monthly sum, but rather an award per month made by the court and when due each month, became a judgment in favor of Virginia; but after John's death there could be no judgments, since the obligation of support terminates upon the former husband's death, and periodic payments of alimony likewise terminate upon that event. Second, assuming *arguendo,* the district court possessed the power on January 11, 1967, to enforce alimony payments against the estate of John E. Sweeney pursuant to K. S. A. 60-1610 (d), neither the stipulation nor the divorce decree contained John's voluntary agreement to bind his estate for future alimony payments, or a clear statement of intent to do so, hence, liability for alimony ceased upon John's death.

In 1963, the Legislature made substantial changes in the law of divorce and alimony when it enacted K. S. A. 60-1610 (since amended in particulars not material to this controversy [now K. S. A. 1971 Supp. 60-1610]) and designated matters which might be included in a decree. The section relates (a) to the care and custody of minor children; (b) the division of property of the parties; (c) the allowance of alimony to either party, and (d) the approval of separation agreements found by the court to be valid, just, and equitable. Subsection (d) reads:

"If the parties have entered into a separation agreement which the court finds to be valid, just, and equitable, it shall be incorporated in the decree; and the provisions thereof on all matters settled thereby shall be confirmed in the decree except that any provisions for the custody, support, or education of the minor children shall be subject to the control of the court in accordance with all other provisions of this article. Matters, settled by such an agreement, other than matters pertaining to the custody, support or education of the minor

children, shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent."

The section has been touched upon in *Drummond v. Drummond,* 209 Kan. 86, 495 P. 2d 994; *Baird v. Baird,* 209 Kan. 604, 498 P. 2d 83; *Cramer v. Wohlgemuth,* 195 Kan. 622, 408 P. 2d 644; *Tager v. Tager,* 199 Kan. 26, 427 P. 2d 484; *Tyler v. Tyler,* 203 Kan. 565, 572, 455 P. 2d 538, and *Dodd v. Dodd* [No. 46,400], 210 Kan. 50, 499 P. 2d 518.

The subsection changed the law with respect to separation agreements entered into by parties to a divorce action. Previously no statutory law existed in this area other than the married women's property act (K. S. A. 23-207) which recognized marriage settlement contracts and provided for their enforcement. See *Harrah v. Harrah,* 196 Kan. 142, 409 P. 2d 1007. Separation agreements and property settlements have always been subject to the scrutiny of the courts to prevent fraud and oppression, or unfair advantage. (Gard, Kansas Code of Civil Procedure, § 60-1610 [d], p. 733.) The terms of the subsection now control the matter in all aspects, and the requirement of scrutiny is in accord with generally recognized principles to assure the agreement is valid, just, and equitable.

Where parties to a divorce action have entered into a separation agreement and the same has been found by the district court to be valid, just, and equitable, the statute directs it shall "be incorporated in the decree," and all matters settled by its terms and provisions "shall be confirmed in the decree," except that provision for the custody, control and education of minor children shall remain subject to the control of the district court. All matters settled by such agreement, except with respect to provisions for minor children, *shall not be subject to subsequent modification by the court,* except as the agreement itself may provide, or the parties may subsequently consent.

Pursuant to the foregoing, we are of the opinion the intent of the subsection is to merge all matters settled by such agreement into the court's decree. The phrases "be incorporated in the decree" and "shall be confirmed in the decree" must be read together, and are intended to mean that the terms and provisions of a separation agreement are to be ratified and approved by the court by its formal consent so as to provide judicial evidence of the terms and provisions of the agreement. In *Larned v. Larned,* 98 Kan. 328, 332, 158 Pac. 3, it was said the definition of the word "confirm"

is to make firmer, to strengthen, sanction, or ratify. By its judicial sanction through confirmation, the court makes the agreement judicial in character, entitling the parties to the full benefit of the agreement which is no longer executory but executed. When confirmed, the executed agreement is subject to enforcement pursuant to its terms and the decree of the court. In determining the effect of the decree, the agreement is properly to be considered, and this court is of the opinion the confirmation of the agreement and its merger into the decree does not abolish the contractual aspects of the agreement, but leaves the court in the position to construe the provisions of the agreement consistent with the facts and circumstances and the expressed intention of the parties.

Such a conclusion follows from the language of the subsection that "matters, settled by such an agreement . . . shall not be subject to subsequent modification by the court except as the agreement itself may prescribe, or the parties may subsequently consent." While the court is directed to examine and confirm the agreement and incorporate it in the decree, it may not subsequently modify the agreement except as its provisions prescribe, or the parties subsequently consent. In *Dodd v. Dodd,* supra, it was held:

"Payment of alimony settled by agreement, found by the trial court to be valid, just and equitable, and incorporated in the divorce decree, is not subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent (K. S. A. 1971 Supp. 60-1610 [*d*])." Syl. ¶ 1.

This clearly indicates the agreement was intended by the statute to have force and effect in addition to being incorporated in the decree. Thus, the effect of the court's confirmation is to create a hybrid in the law having the characteristics of a judgment and retaining the contractual rights of the parties.

We conclude the executor's first contention that the separation agreement is unenforceable except through its merger with the judgment is without merit.

Did the liability for monthly alimony payments provided for in the stipulation and written into the decree continue to accrue after John E. Sweeney's death? While considerable authority from other jurisdictions bears directly upon the question, it seems to be an open one in this state.

The general rule is that periodic payments of alimony to a divorced wife terminate upon the former husband's death in the absence of a provision in the settlement agreement, or in the decree,

which expressly so states, or contains language which makes the intent unmistakably clear that such payments are to continue after his death. (24 Am. Jur. 2d, Divorce and Separation, § 642, p. 763, § 911, p. 1035; 27A C. J. S., Divorce, § 240b, p. 1155; 101 A. L. R. 323, 324.) Likewise, there is authority that a court has no power without the husband's consent to require payments of alimony to continue after his death. (*Ibid.*) It has been said the basis for the general rule is that an allowance of alimony is a substitute for the right of marital support and since such right of support terminates upon the husband's death, periodic payments of alimony should likewise terminate upon such event.

The authorities are likewise in accord that parties to a divorce action have the right to agree in a separate agreement that alimony payments to the wife shall continue after the former husband's death, and where such agreement is approved by the court and incorporated in the decree, it is valid and enforceable against the husband's estate. (27A C. J. S., Divorce, § 240b, p. 1155; 24 Am. Jur. 2d, Divorce and Separation, § 911, p. 1035; 2 Nelson on Divorce and Annulment, 2d Ed., 1961 Revision, pp. 92-94; Anno: 101 A. L. R., 323, 327, 328; Schouler Divorce Manual [1944], § 280 [*d*], p. 421.)

Under our statute (K. S. A. 1971 Supp. 60-1601, 60-1610) and our decisions (*Ediger v. Ediger*, 206 Kan. 447, 479 P. 2d 823; *Drummond v. Drummond*, supra; *Flannery v. Flannery*, 203 Kan. 239, 452 P. 2d 846, and cases cited therein) divorce ends the marital relationship, and a judgment for alimony is a final determination of the rights of the parties with respect to alimony. Likewise, the statute (60-1610) prescribing an allowance to the wife for future support, is denominated as alimony. In *Ediger* it was said that alimony is a substitute for marital support which a husband may be compelled to pay his former wife after there has been a divorce. In *Drummond* it was held:

"Alimony is a future support concept and it has no relationship to a division of property aspect.

"A trial court after entering an original decree which determines a division of property has no continuing jurisdiction of that part of the decree and no power to modify that part of the decree." (Syl. ¶¶ 1, 2.)

It is clear that, under our statute (60-1610), our decisions (*Ibid.*), the separation agreement in this case, and the final decree itself (which specifically fingered the matter), Virginia's claim in the instant case is for future support money, denominated as alimony—

a substitute for marital support—and that it has no relationship to the division of the parties' property as therein prescribed.

Without further discussion of the matter, and responding directly to the question involved in the case, we are of the opinion the rule is sound that before monthly alimony payments may be held to continue after the death of the former husband, the decree or the stipulation on which the decree is based, must expressly so state, or contain language which makes such intent clear and unmistakable, and we adopt the same in this jurisdiction.

In 24 Am. Jur., 2d, Divorce and Separation, § 642, p. 763, it was said:

"Where the court has the power to order that permanent alimony shall be payable after the death of the husband, the question whether the liability for payments ceases at his death depends upon the intention of the court as determined in the light of the circumstances of the particular case, with particular emphasis upon the nature and terms of the decree allowing alimony. Moreover, it has been said that the issue depends solely upon the language of the court as embodied in the decree. *At any rate, in order that payments may be held to continue after the husband's death, the decree must say so expressly or contain language which makes such intent clear and unmistakable. In the absence of a specific statement, or clear manifestation of intent in the decree, that alimony shall continue after the death of the husband, it will be presumed that the payments abate on his death.* A mere decree that the husband shall pay monthly alimony, without stating how long the payments shall be made, does not manifest an intent that the payments shall continue after the husband's death, and thus they abate on his death. An order for monthly payments until further order of the court does not purport to continue the liability for payments beyond the date of the husband's death.

"A divorce decree providing for the payment of alimony 'as long as she remains unmarried' does not purport to continue the liability for alimony after the death of the husband. *And it has been held that a decree for the payment of alimony to the wife 'until her death or remarriage' does not, expressly or by fair implication, show an intent to extend the payments beyond the husband's death. . . .*" (Emphasis supplied.)

The court has made a careful examination of the separation agreement and the final decree entered thereon in this case, and it has not been able to find any provision which would manifest a clear intent that alimony would continue after the death of the divorced husband. In fact, the indication is quite to the contrary.

In the instant case, the separation agreement of the parties was agreed upon by them. The district court, after considering the circumstances, confirmed this agreement and decreed judgment accordingly. Paragraph No. 10 of the stipulation was finding No.

12 of the court's findings, heretofore quoted. The judgment portion of the final decree with respect to that finding reads:

"IT IS FURTHER BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DE-CREED that defendant be and he is hereby ordered to keep in effect his Prudential Life Insurance policy No. 31199270, the proceeds of which are to be applied, *in case of defendant's death,* to the payment of the unpaid balance on the present mortgage loan on said real estate, and said defendant is ordered to execute all necessary endorsements on said policy to accomplish that end." (Emphasis supplied.)

It will be noted that specific provision was made for payment of the mortgage on the home that was awarded to Virginia under the property settlement portion of the stipulation and the decree, *in case of the death of John,* but there was no reference to, nor provision for the payment of monthly alimony after the death of the divorced husband. Moreover, it is obvious that the intention of the parties, at the time they negotiated the separation agreement in the divorce action, was that the installments of $650 per month were to be paid out of the income received by John from his profession. As we have seen, provisions in the stipulation and in the decree that John was to make payments of alimony each month to Virginia "until her death or remarriage" do not expressly or by fair implication show an intent to extend the payments beyond his death.

It would serve no useful purpose to annotate in this opinion the many cases pro and con on the question. However, those wishing to research the rule that an agreement to pay monthly alimony does not survive the death of the husband in the absence of a specific provision in the separation agreement or decree of divorce showing an intention that monthly payments should survive the husband's death should see *Prime v. Prime,* 172 Ore. 34, 139 P. 2d 550; *Mullen v. Mullen,* 246 Iowa 1255, 69 N. W. 2d 420; *Snouffer v. Snouffer,* 132 Ohio St. 617, 9 N. E. 2d 621; *Cooke v. Cooke,* 154 N. Y. S. 2d 757, 2 App. Div. 2d 128; *Masters v. Masters,* 155 Neb. 569, 52 N. W. 2d 802; *Parsons v. Parsons' Estate,* 70 Colo. 333, 201 Pac. 559, 18 A. L. R. 1038; *Berry v. Berry,* 208 Ga. 285, 66 S. E. 2d 336; *Carrell v. Carrell,* 250 Iowa 983, 96 N. W. 2d 315; *Durrett v. Durrett,* 204 Va. 59, 129 S. E. 2d 50; *Bird v. Henke,* 65 Wash. 2d 79, 395 P. 2d 751; *In re Freeland's Estate* (Fla.), 182 So. 2d 425. See, Anno: 39 A. L. R. 2d, § 4, p. 1412.

The appellant relies heavily on the case of *In re Estate of Shideler,* 172 Kan. 695, 242 P. 2d 1057. The *Shideler* case and the case under

consideration are distinguishable under the facts. The *Shideler* case involved a property settlement in contemplation of divorce and the husband was to make monthly payments in connection therewith.

In the case under consideration, the property settlement was complete with the payment of the loan against the home property from the insurance policy. We are here considering only a claim for monthly payments for "support and maintenance," "denominated as alimony."

We see a clear distinction between monthly payments as part of property settlement where the husband desires to retain the lion's share of the property, and monthly payments for support and maintenance, denominated as alimony, where an attempt is made to establish a claim against an estate.

We turn now to the question whether an allegation in a petition for allowance of demand, based upon a separation agreement between parents in a divorce action, which was confirmed by the district court and incorporated in the decree, ordering the decedent father to pay "for the support, maintenance and education of the minor children . . . the sum of $100.00 per month per child . . . until each of said children shall have attained his majority or until the further order of the court," alleges a claim for relief against his estate for installments accruing after his death. The question appears to be one of first impression in this state, and we find conflicting decisions and pronouncements of rules controlling the disposition of the issue.

In this jurisdiction a parent, and particularly a father, has a continuing obligation of support for his minor children, which is not suspended by the divorce of the parents. (*Ediger v. Ediger*, supra, p. 454.) In that case it was said the duty of the father to make such payments "rest[s] on statutory and parental relationship." In *Scudder v. Scudder*, 55 Wash. 2d 454, 348 P. 2d 225, the court said a decree ordering payment of child support was "simply a recitation of the husband's common-law duty to support his children during their minority, and nothing more."

At common law, a father's duty to support his children ended with his death. See *Newman v. Burwell*, 216 Cal. 608, 15 P. 2d 511, 512; note 35 Va. L. Rev. 482; Anno: 18 A. L. R. 2d 1126, 1127.

While there is a sharp conflict of judicial authority on the question, many courts of last resort hold that, absent a contractual obligation

binding the father to make payments for the support of his minor children after his death, courts are without power to make the support order a charge against his estate. (*Streight v. Streight,* 226 Or. 386, 360 P. 2d 304; *Cooper v. Estate of Cooper,* 350 Ill. App. 37, 111 N. E. 2d 564; *Byrne v. Byrne,* 201 Misc. 913, 112 N. Y. S. 2d 569; *Fessman Estate,* 386 Pa. 447, 126 A. 2d 676; *Bailey v. Bailey,* 86 Nev. 483, 471 P. 2d 220; *Gardine v. Cottey,* 360 Mo. 681, 230 S. W. 2d 731; *Kruvant v. Kruvant,* 100 N. J. Super. 107, 241 A. 2d 259; *In Re Kerby's Estate,* 49 Tenn. App. 329, 354 S. W. 2d 814; *Wiedrich v. Wiedrich* [N. D.], 179 N. W. 2d 728. Anno: 18 A. L. R. 2d 1100; 24 Am. Jur. 2d, Divorce and Separation, § 856, p. 971; 27B C. J.S., Divorce, § 323f. p. 729.)

We are of the opinion that a separation agreement entered into between parents of minor children in a divorce action pursuant to K. S. A. 1971 Supp. 60-1610 (*d*), which expressly contains language binding the father's estate to make child support payments after his death, may constitute a valid claim against his estate. However, we decline to hold that an agreement and a decree based thereon which merely recites an obligation to pay child support during the minority of such children or until the further order of the court, constitutes a valid claim against the father's estate. We are convinced that if such an agreement is to be held to impose upon the father a greater duty of child support than required by the common law, the agreement must expressly state that such obligation is to survive the death of the obligor. In *Streight* it was said:

"We also find that the majority of the states which have been confronted with the question hold that on the death of a parent who has been ordered to make payments for the support of a child such order terminates automatically with respect to payments which would have accrued after such death. This is true, at least, where the court has not, pursuant to the agreement of the parties, in effect ordered that the payment shall not be affected by the parent's death. . . .

"If we follow plaintiff's argument to its ultimate conclusion, we would find ourselves in the position of circumventing in part the long-established right of testator to make an unrestricted disposition of his estate . . . [T]he effect of which would be to invest children of divorced parents with a preferred status akin to a mandatory right to inherit from a deceased father, at least to the extent of assured support to and until they attain their majority. Such a privilege is one not enjoyed by children of families where the marital ties have not been dissolved. This we decline to do. If such a change in public policy seems warranted, then its proponents should address the legislature." (pp. 390, 391.)

See, also *Bailey,* supra.

After the fullest consideration of the separation agreement and the decree, and weighing from a sympathetic standpoint the court's awareness of the public policy to be served in molding the law to provide for the support of minor children, as against the public policy and rule of law which permits a father to remain in charge of his property and dispose of it as he will, we think the logical rule to be adopted is that support payments for minor children do not survive the death of the father so as to bind his estate unless there is express language in the agreement evidencing that intention of the parties.

It is clear from a reading of the separation agreement and the divorce decree that the parties never had in mind the question of survivorship of the monthly support payments or for the education of the minor children, since there is no language in either which expressly or impliedly evidenced that intent. As previously indicated, the only reference in the agreement or in the decree concerning the event of John's death was that the mortgage payments on the home be paid from an insurance policy on his life. In addition, and with respect to the educational provision, both the agreement and the decree contained language evidencing an intent to relieve John of that obligation—"in the event of a change of circumstances where defendant may not be able to carry out the said educational plan, he shall not be required to do so."

In view of conclusions heretofore announced, it is unnecessary to discuss and decide other questions raised in the appeal. There is no dispute as to the claim for the $600 support payments which John was in arrears, and that claim was properly allowed against his estate. However, the district court erred in allowing Virginia's claim for alimony and child support payments which became due after John's death, and that order is reversed with directions that it be set aside and judgment entered thereon in behalf of the executor.

It is so ordered.

PRAGER, J., not participating.