(616 P.2d 306)
No. 50,969

JANET L. LIBEL, *Appellee,* v. JOHN J. LIBEL, *Appellant.*

Opinion filed September 12, 1980.

*Robert D. Hecht* of Scott, Quinlan & Hecht, of Topeka, for the appellant.

*John C. Tillotson* of Murray & Tillotson, Chartered, of Leavenworth, for the appellee.

Before FOTH, C.J., SWINEHART, J., and HARMAN, C.J. Retired, sitting by designation.

HARMAN, C.J. Retired: This appeal is from an order upholding a post-divorce agreement which increased the alimony to the wife beyond that fixed in the parties' separation agreement, which was approved by the trial court and incorporated in the divorce decree.

After eleven years of marriage, the appellee-wife was granted a default divorce on July 12, 1976. Per their agreement, which contained no provision for modification, she was granted the custody of their two sons, one of whom was born in 1969 and the other in 1972; $300 per month support money was ordered for each child until each completed high school, and alimony of $400 per month through December, 1978, was decreed, both items to be paid by the appellant-husband.

Later, on November 12, 1977, the parties prepared and signed this agreement:

"I John Libel today, 11-12-77, agree to extended $400 month support, per divorce decree, thru 9-30-79. School tuition for spring 77, fall 78 and spring 79 is also included.                    s/John L. Libel
                                                  s/Janet L. Libel"

Appellant balked at complying with this new agreement, trig-

gering appellee's motion for an order directing compliance with it. She also sought increased child support while appellant asked for reduction.

After hearing, the trial court denied both requests for child support modification, but granted appellee's request to increase alimony payments in accord with the new agreement. This appeal ensued.

Appellant's basis for relief is K.S.A. 1979 Supp. 60-1610(*e*), which provides:

"If the parties have entered into a separation agreement which the court finds to be valid, just, and equitable, it shall be incorporated in the decree; and the provisions thereof on all matters settled thereby shall be confirmed in the decree except that any provisions for the custody, support, or education of the minor children shall be subject to the control of the court in accordance with all other provisions of this article. *Matters, settled by such an agreement, other than matters pertaining to the custody, support, or education of the minor children, shall not be subject to subsequent modification by the court except as the agreement itself may prescribe or the parties may subsequently consent.*" (Emphasis supplied.)

Appellant admits he signed the agreement, indeed he penciled the body of it himself, but he urges his consent was invalid because it was obtained under duress because of appellee's threats to curtail his visitation privileges with his two sons.

"To constitute duress by threats the actor's manifestation must be made for the purpose of coercing the other; must have for its object the securing of undue advantage with respect to the other; must be of such a character that it is adapted to overpower the will of the other and is reasonably adequate for the purpose; must in fact deprive the other of free exercise of will; and must cause the other to act to his detriment." *Motor Equipment Co. v. McLaughlin,* 156 Kan. 258, Syl. ¶ 1, 133 P.2d 149 (1943).

Thus, the important question in cases of this character is whether the party threatened was, by such threats, deprived of the exercise of his free will.

Generally, absent a confidential or fiduciary relationship between the parties, one who asserts duress to avoid an agreement has the burden of proof to establish that claim (see 25 Am. Jur. 2d, Duress and Undue Influence § 31, p. 392), and such evidence must be of a substantial nature (*Motor Equipment Co. v. McLaughlin,* 156 Kan. at 266).

Appellant did testify that appellee was very emotional and upset and told him she needed one thousand dollars per month for herself and her children to continue her education, and that

she said that his conduct in that respect would govern the extent of his child visitation. No specifics as to limitations were given. Appellant had in fact been previously visiting the children frequently but not without difficulties, two of which had resulted in further court action and, additionally, court-suggested counseling at a public mental health and guidance center (which points up the fact that, after all, visitation rights can be the subject of judicial action, as appellant well knew). Appellee had had two years college and, at the time of the divorce, it was contemplated she would resume her schooling and secure a degree in two more years so she could teach in elementary schools. Despite good grades, she was unable to attain her goal of graduation until May, 1979, apparently because of loss of previously earned credits. She testified it was understood at the time of the second agreement that as a new teacher she would not be paid any salary until the end of September, 1979—hence, the nine-months' extension of alimony to that date. Appellant had in fact voluntarily paid some of her tuition and for some books. At the time of the signing of the last agreement, the parties did consult by telephone the only attorney involved in the default divorce (not present counsel), which person had served as appellant's business counsel. This attorney advised that no further formality such as notarization was needed for the agreement to be valid.

Appellant summarized his position by this testimony:

"I wrote it out because I was terribly frustrated and under great anguish about my relationship with the boys. I had just remarried a month prior to this, and I reasoned that giving her her way again would possibly take some pressure off and that she would not hassle me in my new marriage and that the boys would be taken care of."

Both parties seemed genuinely concerned for the boys' best interests. More could be said, but the matter need not be further labored. We cannot say that the trial court erred in determining this factual issue.

Appellant further asserts that lack of consideration flowing to him invalidated his consent. Assuming, without deciding, that consideration was a requisite for modification in this instance, we think the trial court did not err in determining sufficient consideration existed in that "the boys would be taken care of," and appellant in the future would not be subject to a disproportionate

share of supplying their needs in the light of appellee's enhanced earning capacity.

The judgment is affirmed.