(638 P.2d 980)
No. 52,535

KEITH W. COOK, *Appellee,* v. EULA A. COOK, *Appellant.*

Opinion filed January 14, 1982.

*Jerry D. Fairbanks,* of Whalen & Fairbanks, P.A., of Goodland, for the appellant.

*Floyd E. Jensen,* of Kite and Day, of St. Francis, for the appellee.

Before JUSTICE HERD, presiding, SWINEHART, J., and LEWIS L. McLAUGHLIN, District Judge Retired, assigned.

McLAUGHLIN, J.: This is a divorce action in which the defendant, Eula A. Cook, appeals from the district court's approval of the property settlement agreement. At the time of the filing of the divorce action, the parties had been married approximately thirty years and had accumulated substantial real and personal property, most of which is related to their farming operations. The

parties had two children who were both adults at the time of the divorce.

Pursuant to defendant's motion and the resulting court order, plaintiff, Keith W. Cook, submitted a list of the parties' property. This list itemized the parties' assets but, with rare exception, did not recite the value of any. Because the parties could not initially reach a property settlement agreement, court-appointed appraisers were to commence appraising all the property May 20, 1980, the day of the divorce hearing. On May 19, 1980, however, the parties had a settlement agreement drafted which the defendant signed May 20. The agreement recites that it was drafted by an attorney who was employed by both parties with the knowledge of their respective counsel. The agreement divides the property primarily by reference to plaintiff's property list, provides that the plaintiff assumes all the parties' debts except defendant's attorney fees for this action, and releases both parties from any alimony obligations.

On May 20, 1980, the parties appeared in court and made no objection to the case being heard by Judge Jack L. Burr, in the absence of Judge Keith Willoughby who had previously been involved in the case. At that hearing defendant's counsel vigorously objected to the agreement on the grounds that it was inequitable and that defendant was coerced into signing it.

Plaintiff provided the court with the only evidence concerning the value of the assets. He testified that under the agreement he received approximately two million dollars in assets and assumed one million dollars of the parties' debts, and that defendant received approximately $900,000 in assets and no debts except her attorney fees. Defendant testified she had received four telephone calls from the plaintiff and one from her own brother urging her to settle in order to avoid the costs of a property appraisal, and that she signed the agreement to keep peace in the family. The defendant and the court engaged in the following colloquy:

"THE COURT: Very well. Mrs. Cook, you realize that you don't have to agree to this particular settlement, you understand that?

"MRS. COOK: There are several things that are involved now. My mother is very sick, Judge Burr, she's going to die one of these times and if there can be peace to where—that's all she asks for is peace, she says get it straightened out, if there can be peace, I want there to be peace.

"THE COURT: Well, there may be a lot of reasons behind why you wish to sign

the agreement and why your husband wishes to sign the agreement, the thing is, I want you to make sure that you understand that you don't have to sign it, you know that?

"MRS. COOK: Isn't it already signed?

"THE COURT: Well, yes, but it would have to be approved by me, it has to be approved by this Court and the reason I'm asking you these questions is to decide whether or not I want to approve that property settlement.

"MRS. COOK: Okay.

"THE COURT: Now, you understand that you don't have to sign—you did not have to sign that agreement?

"MRS. COOK: I understand that.

"THE COURT: Okay. And you understand that before the agreement actually becomes and takes full force and effect this Court has to approve it?

"MRS. COOK: So I am at your mercy, Your Honor.

"THE COURT: No, that's the reason I'm asking you these questions, I want to make sure that you understand what you signed.

"MRS. COOK: Okay.

"THE COURT: And whether or not you did so voluntarily, okay?

"MRS. COOK: I thought that there were a few things that needed to be changed, but it seemed like this was the only way that there could be peace and so, I signed it.

"THE COURT: Did you feel that the only reason you signed it was because you felt like you were threatened or forced to sign it in any way?

"MRS. COOK: This is also affecting my children, it's affecting our work, divorce affects everything.

"THE COURT: Well, you're interested in getting the case finalized yourself, I assume, aren't you?

"MRS. COOK: If this is what it is going to take, I don't believe in divorce, but if this is what it's going to take.

. . . .

"THE COURT: Mrs. Cook, you've been involved in the farming operation all during your marriage and have been involved in the accumulation of property and the buying and selling of livestock, in other words, you understand the operation, you're familiar with it?

"MRS. COOK: Yes, I am, most familiar.

"THE COURT: Then my next question is, in the property settlement agreement there is a substantial list of property, real estate and personal property, livestock and various farm machinery and so forth, do you feel that you are familiar enough with the operation to be able to know whether or not that agreement covers all the property?

"MRS. COOK: As far—now like on the tools and machinery that he may have purchased, I wouldn't have any knowledge as to that, but unless this has been changed from what was presented before, it appears to me to be a most complete copy.

"THE COURT: It covers the operation and the things that have been accumulated by the two of you during your marriage, is that correct?

"MRS. COOK: Yes, there are some other things that would be involved in this because there was nothing mentioned in the settlement with regard to the leased

land and where ordinarily as a husband and wife team the tenant is entitled to two-thirds (⅔) of the growing crop and the landlord is entitled to a third (⅓), there's been no allowance made in regard to that.

"THE COURT: Well now, is this property that is leased by you that is farmed by you and your husband or property that you lease out to someone else to farm?

"MRS. COOK: No, it is property that has been leased by us, the lease itself is held in my husband's name. We've done business that way because it seemed reasonabler. (sp)

"THE COURT: And that is not included in any of the listings?

"MRS. COOK: No, not that I know of in this.

"THE COURT: Do you feel that it should be?

"MRS. COOK: I think there should be some allowance made for that through—because a major part of our income comes from that. I think if you will notice in some of the sales that have been made recently, I think there was a hundred and fifty-one thousand dollars ($151,000.00) worth of wheat. To me, that's a lot of money, Judge Burr.

"THE COURT: Well now, Mrs. Cook, what you're telling me, in effect, is that this agreement doesn't cover everything, in your opinion?

"MRS. COOK: About the business of running the farm, no, it doesn't. It may cover what we have actual ownership to, but it doesn't cover lease land where there is income from lease lands.

"THE COURT: Well, I don't want to get into a discussion about legally who is entitled to lease land, all I want to ask you is, are you satisfied with this property settlement agreement, do you want the divorce to be granted and this property settlement approved as it is now in front of you?

"MRS. COOK: With the exception of alimony, I would settle for this.

"THE COURT: Well now, if the property settlement agreement is approved, then there will be no alimony.

"MRS. COOK: Then otherwise may I ask you what choice I have, otherwise it will come up before the other Judge the 12th?

"THE COURT: You have a choice to continue on with the appraisal and have a hearing and the Court will make a decision.

"MRS. COOK: For the children's sake, I think it would be better to do this then.

"THE COURT: Well, that's what I'm asking you.

"MRS. COOK: Okay.

"THE COURT: Now, you don't have to agree to that, I'm not asking you to agree to it one way or the other, I just want to make sure you understand that this property settlement agreement will dispose of the property in accordance with its terms and there won't be another hearing to decide whether or nor [sic] there should be alimony and—

"MRS. COOK: (interrupting) This is final?

"THE COURT: This is it at this point if this agreement is approved, I want to make sure you understand that. Now, you've heard Mr. Oglevie's comments that he will not approve it on your behalf. Whether or not you wish to go along with it, that's what you have to tell me.

"MR. OGLEVIE: May it please the Court, I'd wish to reiterate and reincorporate those remarks.

"THE COURT: It's on the record and Mrs. Cook, I'm sure, is aware of your opinion, Mr. Oglevie, but I simply want to satisfy myself at this point.

"MRS. COOK: I can live with this, I think, Judge Burr, it may not be good, but I can live with it.

"THE COURT: Well, I'm sorry, but I'm simply going to ask you at this time, are you asking me, as the Judge hearing this case, to approve this property settlement agreement today?

"MRS. COOK: Yes, I will."

The court, in approving the settlement agreement, found the defendant was competent and knew the nature and extent of the property involved, and also found the agreement was not brought about through duress or coercion. Defendant's motion for a new trial because of the alleged duress was denied.

The defendant contends on appeal that the property list submitted by plaintiff did not comply with Supreme Court Rule No. 164 (225 Kan. lxxi) because it did not state the values of the assets, and further contends that noncompliance with the rule deprived the district court of jurisdiction over the case. Whether failure to strictly comply with Rule No. 164 requires a new trial has not been decided by Kansas courts. Defendant argues that the phrase "a written inventory and fact sheet or sheets *shall* be prepared by counsel and furnished to the court  . . . ." (emphasis supplied), mandates compliance by counsel and the court. A more reasonable interpretation of the phrase is that compliance by counsel is mandated, subject to the court's discretionary waiver. There is no mention of jurisdiction in the rule.

The defendant also asserts on appeal that the district court abused its discretion in finding the settlement agreement valid, just and equitable under K.S.A. 1980 Supp. 60-1610(*e*) in that the settlement was brought about through duress and because plaintiff's testimony was the only evidence concerning property valuation. We agree in part.

K.S.A. 1980 Supp. 60-1610(*e*) provides that property settlement agreements which the court finds to be valid, just and equitable shall be incorporated into the divorce decree. Settlement agreements have always been subject to scrutiny of the court to prevent fraud and oppression or unfair advantage, and this scrutiny is in accord with recognized principles to assure the agreement is valid, just and equitable. *In re Estate of Sweeney,* 210 Kan. 216, 223, 500 P.2d 56 (1972). Although the court may not need detailed evidence of the parties' financial worth when dividing their property according to their agreement, *Tager v. Tager,* 199 Kan.

26, 32, 427 P.2d 484 (1967), mere agreement by the parties does not vitiate the court's duty to scrutinize the settlement agreement, and if the agreement is not valid, just and equitable, the court should reject or alter it. *Lewis v. Lewis,* 4 Kan. App. 2d 165, 603 P.2d 650 (1979).

The defendant has alleged she was under great pressure by the plaintiff and other family members to effect a settlement in order to avoid a property appraisal. Duress and undue influence in the context of divorce agreements was recently discussed in *Libel v. Libel,* 5 Kan. App. 2d 367, 368, 616 P.2d 306 (1980), wherein it is stated:

> " 'To constitute duress by threats the actor's manifestation must be made for the purpose of coercing the other; must have for its object the securing of undue advantage with respect to the other; must be of such a character that it is adapted to overpower the will of the other and is reasonably adequate for the purpose; must in fact deprive the other of free exercise of will; and must cause the other to act to his detriment.' " *Motor Equipment Co. v. McLaughlin,* 156 Kan. 258, Syl. ¶ 1, 133 P.2d 149 (1943).
>
> . . . .
>
> "Generally, absent a confidential or fiduciary relationship between the parties, one who asserts duress to avoid an agreement has the burden of proof to establish that claim (see 25 Am. Jur. 2d, Duress and Undue Influence § 31, p. 392), and such evidence must be of a substantial nature (*Motor Equipment Co. v. McLaughlin,* 156 Kan. at 266)."

The court in the present case clearly found that the defendant had not met her burden of proof to show actual duress or coercion. Without disturbing that finding, we nonetheless hold that when one party produces some evidence of pressure to enter a settlement in order to avoid a property appraisal, and her testimony evinces material reservations concerning the agreement, and the only evidence of property values is the other party's testimony summarizing their respective shares, and the agreement fails to include the parties' interest in a large acreage they worked as tenant farmers, the court cannot properly find the agreement valid, just and equitable under K.S.A. 1980 Supp. 60-1610(*e*). Further, in reviewing the defendant's testimony set out above, her request that the court approve the agreement appears equivocal at best. In our opinion, the court abused its discretion in approving the property settlement agreement.

Defendant also appeals the court's approval of her attorney fees and asserts that plaintiff's attorney was just as involved in this

matter as her attorney, and that while plaintiff's attorney received only $5,000, her attorney received $12,500.

In this case the court did not award attorney fees to one party under K.S.A. 1980 Supp. 60-1610(*g*), but rather approved the settlement agreement that each party would be responsible for his or her own attorney fees and then recited in the decree that $12,500 was a fair and reasonable fee for defendant's attorney. Nevertheless, the analogy suggests that the same standard of review should apply, and it is well established that the reasonable value of such fees rests largely in the sound discretion of the trial court. *Wiles v. Wiles,* 200 Kan. 574, 576, 438 P.2d 81 (1968); *Neis v. Neis,* 3 Kan. App. 2d 589, 599 P.2d 305, *rev. denied* 226 Kan. 792 (1979). See also *Scimeca v. Scimeca,* 1 Kan. App. 2d 70, 561 P.2d 904 (1977) (appellate court may fix counsel fees when in disagreement with the trial court). The question on appeal, then, is whether the trial court abused its discretion in approving defendant's attorney fees. Reviewing the record, we find there is no evidence upon which the court could have found the fees were fair and reasonable. Although considerable property was involved, there is absolutely no evidence of the time defendant's counsel spent preparing this case, nor is there any other basis upon which to determine the value of his services. The record does not disclose evidence of any agreement between defendant and her counsel as to the amount of his fee. The agreement did provide that each party would pay his or her own attorney fee, but no amount was stated. When defendant testified at trial, her attorney interrupted her and stated he had told her his fee would be $12,000 plus $500 expenses, but nowhere does it appear that defendant understood or agreed to that amount. In our opinion, the court abused its discretion in approving the fees.

The judgment is reversed and remanded for further proceedings in accord with the views expressed herein.