NOT DESIGNATED FOR PUBLICATION

No. 117,927

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

PIA M. FISHER,
*Appellant*,

and

LLOYD M. FISHER,
*Appellee*.


MEMORANDUM OPINION

Appeal from Leavenworth District Court; DAN K. WILEY, judge. Opinion filed July 20, 2018. Affirmed.

*John W. Fresh*, of Farris & Fresh Law Office, of Atchison, for appellant.

No appearance by appellee.

Before GARDNER, P.J., PIERRON, J., and WALKER, S.J.

PER CURIAM: Pia M. Fisher appeals from the district court's decision denying her motion for relief from judgment in her divorce action. Pia claims that duress, undue influence, and fraud by her former spouse, Lloyd M. Fisher, should have caused the court to invalidate the settlement agreement they entered into and which was approved by the district court. Because we find no error in the district court's denial of the motion, we affirm the decision.

FACTS

Pia filed for divorce from Lloyd after 33 years of marriage. The district court granted the couple a divorce on the grounds of incompatibility and set aside the issues of maintenance, property, and debt division for a later hearing. Several months later, the parties entered into a written settlement agreement, which was accepted and adopted by the court.

In the agreement, both parties waived spousal maintenance. In the division of property, Pia and Lloyd each retained one of the couple's two homes, each assuming responsibility for the mortgage on their respective home. Pia kept a life insurance plan as well as some other funds, but she did not receive any of Lloyd's military retirement pension. Pia's list of property included four cars, but they were all crossed out by hand and initialed in the agreement. Lloyd received four cars, a retirement account, a savings account, his military pension, and some other personal property.

As for the allocation of debt, Pia had to pay $18,000 to Lloyd for a 2004 Internal Revenue Service (IRS) tax debt. Lloyd was to assume the rest of the debt once he received Pia's payment. A handwritten note in the agreement also stated Lloyd would "cancel the hearing with the [IRS's] Innocent Spouse Appeal Board immediately after receipt of payment." Pia also assumed $465 in credit card debt and "[a]ny debts [she] accumulated in Europe." Lloyd assumed debt from two credit cards.

The agreement also stated:  "Unless and except as otherwise specifically provided for in this Agreement, the provisions of this Agreement shall not be subsequently modified, except by mutual consent and agreement of the parties, expressed in writing, dated, signed and notarized."

On the second page of the written agreement, a handwritten note read: "Petitioner's counsel has advised her not to sign the settlement agreement as he feels it is not fair, just, and equitable." Nevertheless, both parties signed the agreement. The district court entered a journal entry incorporating the settlement agreement, finding that the terms were "valid, just and equitable."

A little over a month later, Pia filed a pro se motion to modify the settlement agreement. She first asked the district court to reinstate alimony. She explained that she had waived alimony in the settlement agreement because she "felt that this divorce was causing undue stress on [her] and [her] son," and she would never be able to reach a fair agreement because Lloyd's attorney did not cooperate during discovery. Since the agreement, however, her health had deteriorated, making it difficult to go back to work. Pia also asked to eliminate her responsibility for the tax debt because she had received a letter from the IRS finding that she was not responsible for it. The IRS letter was attached to her motion. The district court ultimately interpreted the motion as one to alter or amend judgment under K.S.A. 2017 Supp. 60-259 and denied it as untimely.

Pia then filed an "Amended Motion for Relief from Orders" through counsel, asking the district court to set aside the order incorporating the settlement agreement under K.S.A. 2017 Supp. 60-260(b)(3) because of fraud, misrepresentation, or misconduct by Lloyd. Pia alleged Lloyd had threatened to physically harm her, her son, and her parents if she did not sign the settlement agreement. She alleged that Lloyd had also threatened to involve their son in the couple's divorce and tax issues and that he had made several threats about Pia's possible tax liabilities in Germany. She also claimed the settlement agreement included property that no longer existed at the time of the agreement. Finally, she asserted that the IRS had determined that tax returns submitted in 2001-2005 and 2007-2008 contained her forged signature, and "[w]hen questioned about whether or not [Lloyd] had signed [Pia's] name to these documents without her

3

knowledge or permission, [Lloyd] asserted his [F]ifth [A]mendment privilege [against] self-incrimination."

At a motion hearing, the district court provided an extensive recitation of the facts of the case as well as its reasons for approving the settlement agreement. As for Pia's waiver of any maintenance, the court recalled that Pia had told the court she had an education, believed she would be able to get a job soon, and did not need the support. The court noted that Pia had a bachelor's degree, a master's degree, and had conducted business in Europe on her own behalf. It also pointed out that Pia received U.S. Department of Veterans Affairs disability benefits but had failed to disclose that on her domestic relations affidavit. The court had advised Pia at the time of the agreement that if she waived maintenance, she would not be able to request it later, and Pia had understood that. The court found Pia's decision to waive maintenance was appropriate given her circumstances at the time. The court acknowledged that Pia's circumstances may have changed because of health problems, but since those problems arose after the agreement, it did not affect whether the agreement was valid, fair, and equitable when the couple signed it.

The district court then addressed Pia's claims that Lloyd had threatened her, finding them unpersuasive. The court noted that Pia had raised no issues about abuse until her second postdivorce motion. It found that Pia had provided no evidence to corroborate her allegations. The court acknowledged it reviewed some e-mails from Lloyd to Pia, but it did not consider those e-mails to contain threats. The court found that Pia's testimony about threats was not credible and did not support a finding of duress.

The district court also acknowledged that the IRS had found Pia to be an innocent spouse, but it disagreed with Pia's argument that this ruling made the agreement unfair. The court explained that such a ruling by the IRS was not necessarily controlling, and the court still had to consider the tax debt within the overall property division. It found that

4

the IRS's ruling did not mean that Pia was not responsible for the tax debt without additional evidence.

The district court went through the agreement, calculating that Pia received $111,257 while Lloyd was in debt $70,261. The court acknowledged that Pia's waiver of maintenance was "not insignificant," and Pia had also waived her right to part of Lloyd's military retirement. Even so, the court held that the division of assets in agreement was valid, just, and equitable. The district court ultimately denied the motion for relief from judgment. Pia has timely appealed from that decision.

ANALYSIS

Pia moved for relief from judgment under K.S.A. 2017 Supp. 60-260(b)(3), which permits a court to grant relief from a final judgment on the grounds of fraud, misrepresentation, or misconduct by an opposing party. See *In re Marriage of Bleich*, 23 Kan. App. 2d 982, 985-86, 939 P.2d 966 (1997) (parties may use K.S.A. 60-260[b] motion to challenge divorce decree). We review a district court's ruling on a motion for relief from judgment under K.S.A. 2017 Supp. 60-260(b) for an abuse of discretion. *In re Marriage of Leedy*, 279 Kan. 311, 314, 109 P.3d 1130 (2005). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

On appeal, Pia alleges several grounds for relief. First, she alleges she entered the agreement under duress because Lloyd threatened to harm her physically. Second, she argues Lloyd used undue influence to secure her assent to the agreement. Finally, she claims the agreement should be set aside because of fraud. Although Lloyd did not file a brief, nothing in the record supports Pia's claims, so we must reject her appeal as meritless.

*Duress*

Pia first claims she signed the settlement agreement under duress because Lloyd was threatening her. Separation agreements are subject to contract law and may be set aside when one of the parties enters the agreement under duress or coercion. *In re Marriage of Takusagawa*, 38 Kan. App. 2d 401, 403, 166 P.3d 440 (2007). To constitute duress by threats, "the threats must be purposely coercive, designed to secure undue advantage, deprive the other party of the exercise of free will, and cause the other party to act to his or her detriment." 38 Kan. App. 2d at 404 (citing *Libel v. Libel*, 5 Kan. App. 2d 367, 368, 616 P.2d 306 [1980]). What constitutes duress is a question of fact, but whether the facts constitute duress is a question of law. *Bank of America v. Narula*, 46 Kan. App. 2d 142, 163, 261 P.3d 898 (2011). Generally, absent a confidential or fiduciary relationship between the parties, a party who claims duress has the burden of proof. *Libel*, 5 Kan. App. 2d at 368.

Here, the district court found Pia had failed to prove that Lloyd had threatened her. This is a negative factual finding, and we will not disturb it on appeal unless the district court arbitrarily disregarded undisputed evidence or relied on some extrinsic consideration such as bias, passion, or prejudice in reaching its decision. *Cresto v. Cresto*, 302 Kan. 820, 845, 358 P.3d 831 (2015).

There is no evidence in the record that Lloyd threatened Pia. Pia apparently presented e-mails to the district court that allegedly contained threats, but the court found that they did not constitute threats. Those e-mails are not in the record on appeal. As Pia has the burden to designate a record, this omission is critical. See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644-45, 294 P.3d 287 (2013) (party making claim has burden to designate record and without record, claim of error fails). Without evidence of any threats, the district court did not err in denying Pia's claim of duress.

6

But even though Pia was unable to carry her burden to prove Lloyd had threatened her, she still argues the district court should have inferred duress from the agreement. She contends the agreement benefits Lloyd, and by signing it, she acted to her detriment and against her attorney's advice. She asserts that from this alone the district court could determine some form of duress must have been at play.

Even if we accept Pia's claim that the agreement is favorable to Lloyd, it does not automatically follow that this proves Lloyd used duress to secure the agreement. This is particularly true here, because Pia provided other explanations for her decision to sign the agreement. As the district court recalled, Pia explained that she was waiving maintenance because she believed she could get a job and did not need the support. In her first motion to modify the settlement agreement, she also stated she signed the agreement because the divorce was causing her stress, and she had little hope for a fairer agreement. As a result, we conclude that Pia has failed to carry her burden of proof, and her claim fails.

*Undue influence*

Pia raised no undue influence argument before the district court. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 403, 266 P.3d 516 (2011) (issue not raised before district court cannot be raised on appeal). She also has not explained why we should review her claim for the first time on appeal. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014) (appellant who fails to explain why appellate court may hear issue for first time on appeal waives and abandons that issue). Pia has thus waived and abandoned this issue.

That said, duress and undue influence are similar claims. 25 Am. Jur. 2d, Duress and Undue Influence § 2, p. 618 (2014) ("Duress has been described as an extreme form of undue influence, but undue influence has also been described as one of the ways in which duress can be accomplished, along with a threat or physical compulsion.").

7

Additionally, we note that Pia's undue influence argument is almost identical to her duress argument. But in the interest of completeness, we will briefly examine this issue.

Undue influence may cancel a contract if a contracting party can prove that another's influence overrode his or her free will when the contract was made. *Heck v. Archer*, 23 Kan. App. 2d 57, 62, 927 P.2d 495 (1996). The test of undue influence is whether a party acted under his or her own reason or judgment. A court may determine this from the circumstances, "including the relation of the parties, the time and manner of making suggestions or giving advice, the motive, if any, in making suggestions, and the effect upon the party so acting." *Cersovsky v. Cersovsky*, 201 Kan. 463, 467, 441 P.2d 829 (1968). A court may not infer undue influence simply because someone had the power, motive, and opportunity to exercise that influence. Whether undue influence exists is a question of fact. 201 Kan. at 467. Here, one relevant consideration is the fact that Pia signed the settlement agreement after receiving independent advice from her own attorney.

Pia argues that Lloyd used undue influence to induce her to enter the settlement agreement, and the district court erred because it did not look at the time, place, and manner of the "influential suggestions" she presented. These influential suggestions are presumably Lloyd's alleged threats, as Pia does not appear to have presented any other of Lloyd's suggestions to the court. Yet the court found that there was no evidence that Lloyd had threatened Pia.

All that aside, Pia is essentially arguing that the district court should have inferred undue influence from the circumstances of the agreement. She notes that she and Lloyd were a divorcing couple with significant financial assets. According to Pia, this relationship would have motivated Lloyd to seek a more favorable division of the couple's assets, and the effect of his suggestions, whatever those may have been, should have been evident from the agreement. All Pia has really argued, though, is that Lloyd

had the motive and opportunity to influence her when she entered the agreement. This allegation cannot support a claim of undue influence, so her argument is meritless.

*Fraud*

Finally, Pia claims the settlement agreement should be set aside because of fraud. The elements of fraud are an untrue statement of fact, known to be untrue by the party making it, made with the intent to deceive or with reckless disregard for the truth, upon which another party justifiably relies and acts to his or her detriment. *In re Marriage of Kidane & Araya*, 53 Kan. App. 2d 341, 346, 389 P.3d 212 (2017). A court must never presume fraud. Instead, a party must establish fraud by clear and convincing evidence. *Alires v. McGehee*, 277 Kan. 398, Syl. ¶ 1, 85 P.3d 1191 (2004). The existence of fraud is normally a question of fact. 277 Kan. 398, Syl. ¶ 2.

Pia points to two falsehoods Lloyd allegedly used to deceive her into entering the settlement agreement. First, she claims that the settlement agreement included property that the couple no longer owned at the time of the agreement, although she does not specify what property she is talking about in her brief. At the hearing on Pia's second motion, the district court noted that there had been a dispute over the date the court should use for division of property at the time of the agreement, which led to a further dispute as to what assets existed on those dates. This suggests any possible inclusion of nonexistent property in the agreement stemmed from this dispute rather than a scheme to defraud the other party. In any event, there is simply nothing in the record which suggests Lloyd intentionally included nonexistent property in the settlement agreement to deceive Pia.

Second, Pia claims that Lloyd knew that Pia was not liable for the $18,000 of tax debt she assumed in the agreement because there were tax documents that contained her forged signature and Lloyd had invoked his Fifth Amendment right under the United

9

States Constitution when questioned about the matter. Again, nothing in the record supports Pia's allegations about her forged signatures or Lloyd's invocation of the Fifth Amendment. As a result, she has not proven that Lloyd intentionally misled her. The record also suggests that Pia either suspected or knew she was not responsible for the debt because she requested innocent spouse relief. Thus, by not showing evidence that she relied upon known falsehoods to her detriment, Pia has not proved the elements of fraud by clear and convincing evidence, and the district court did not err in denying her motion.

Affirmed.