NOT DESIGNATED FOR PUBLICATION

No. 123,508

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

TENILLE LEE,
*Appellee*,

and

BRANDON LEE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Cheyenne District Court, SCOTT SHOWALTER, judge. Opinion filed November 5, 2021. Affirmed in part, reversed in part, and remanded with directions.

*Carol M. Park*, of Schwartz & Park, L.L.P., of Hays, for appellant.

*Robert A. Martin*, of Norton, Wasserman, Jones & Kelly, L.L.C., of Salina, and *Ronald S. Shalz*, of Colby, for appellee.

Before MALONE, P.J., POWELL and CLINE, JJ.

POWELL, J.: During the pendency of their divorce proceedings, Tenille Lee and Brandon Lee reached a mediated separation agreement. Both parties agreed to have it incorporated into the divorce decree, so Tenille subsequently asked the district court to do so, but Brandon objected, arguing there had been no meeting of the minds because essential terms had been omitted. The district court disagreed and incorporated the separation agreement into the divorce decree; found the agreement to be valid, just, and equitable; and entered the decree of divorce.

1

Brandon now appeals, arguing the separation agreement is invalid and unenforceable as it lacks essential terms. He also argues insufficient evidence supports the district court's finding that the separation agreement is fair, just, and equitable. For reasons we more fully explain below, we disagree with Brandon's assertion that the separation agreement is not a valid contract. However, we do agree that insufficient evidence supports the district court's finding that the separation agreement is just and equitable as the agreement failed to list the value of significant assets, and there is nothing in the record to show the district court considered the parties' domestic relations affidavits or their financial situations before approving the agreement. Thus, we affirm in part, reverse in part, and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Tenille and Brandon married in 1998, and two children were born of the marriage. On September 24, 2019, Tenille petitioned for divorce in the Cheyenne County District Court.

Tenille and Brandon participated in voluntary mediation and were represented by their own counsel. The mediation, which occurred at Brandon's then-attorney's office, lasted for approximately 10 hours. The parties reached a separation agreement that the mediator memorialized in a document titled "Mediated Agreement." The parties and their counsel, along with the mediator, signed the separation agreement, and the mediator filed it with the district court the same day.

In the separation agreement, the parties agreed to, among other things, the division of real and personal property. At contention here, the parties agreed that Tenille would receive the Fidelity Rollover Individual Retirement Account (IRA), which was in her name, less $32,500, which would become Brandon's. In the list of Tenille's awarded property, the agreement read: "Fidelity Rollover IRA less $32,500.00 to be set aside to

2

Brandon as hereinafter provided." In the list of Brandon's awarded property, the agreement read:

"The sum of $32,500.00 to be set apart to him from the Fidelity [Rollover] IRA subject of paragraph 9.[A.b.] The transfer shall be done via a [Qualified Domestic Relations Order (QDRO)], or a simpler means if possible, without incurring fees or taxes. The transfer shall be made as soon as is reasonably possible after it is determined with certainty, with written verification from each creditor, that Tenille is not liable for any of the credit card [indebtednesses] being assumed by Brandon."

The agreement included several provisions expressing the parties' intent for the agreement to be incorporated into the divorce decree. For example:

"Tenille and Brandon, by this Mediated Agreement, intend to reach the following understanding regarding all of their respective rights in and to any and all property, real or personal, owned by the parties jointly, or in their individual names, and to further fix and determine any and all other rights and obligations of Tenille and Brandon by reason of the marriage, including maintenance, attorney fees, court costs, and divisions of property and indebtedness. *Tenille and Brandon agree that in the event either of the parties secures a Decree of Divorce from the other, both parties agree to request the Court to incorporate the terms and provisions of this Mediated Agreement into the Decree of Divorce, requesting the Court to find the same as being a valid, just and equitable division of their property*." (Emphasis added.)

And:

"It is the intent of Tenille and Brandon that this Mediated Agreement be incorporated into the terms of any Decree of Divorce entered in the above referenced case now pending in the District Court of Cheyenne County, Kansas, and each of the parties agree they will request the Court enter its decree in accordance with the terms of this Mediated Agreement. The contractual obligations of this Mediated Agreement shall continue after its incorporation into any decree."

The parties also stipulated that the agreement was entered into voluntarily and the division of the property in the mediated agreement was valid, just, and equitable.

"Tenille and Brandon acknowledge that each has received independent legal advice from their respective attorneys prior to signing this Mediated Agreement and that they knowingly and intentionally enter into this Mediated Agreement satisfied that it is fair, just and equitable; that each has made a full and complete disclosure of their respective property; liabilities and assets; and that neither of them has acted under duress, compulsion or mistake in executing this Mediated Agreement."

And:

"Tenille and Brandon acknowledge that this Mediated Agreement has been entered freely and voluntarily, with full disclosure of any and all of his or her assets and liabilities. Each party believes this Mediated Agreement to be fair, just and equitable to both parties. Each party has had the opportunity to consult with his or her attorney concerning the provisions of this Mediated Agreement prior to executing the Agreement. Tenille and Brandon acknowledge that the Mediator, Glenn D. Schiffner, is the scrivener of this document and has not purported to represent either party in any way. Each party agrees that they have entered into this Mediated Agreement upon full and mature consideration; that consent to this Agreement has not been obtained by fraud, duress, or undue influence of any person; that they have fully disclosed all assets and all debts, that they have read this Agreement in its entirety; and that they understand this Agreement in its entirety."

After the separation agreement was filed with the district court, no further action was taken in the divorce proceeding until the district court requested an update in July 2020.

Thereafter, on August 27, 2020, Tenille filed a motion to incorporate the terms and provisions of the parties' separation agreement into the court's decree of divorce. In that motion, Tenille asked the district court to reduce Brandon's share of the IRA by

4

$1,358.19 because, when she paid off the credit cards that she agreed to pay under the agreement, the Cabela's credit card account balance was $1,358.19 more than what was represented at mediation. She also asked the district court to order Brandon to be responsible for the preparation of the QDRO needed to transfer the funds from her IRA to Brandon.

Attached to Tenille's motion were notes taken by Brandon's former counsel during mediation and an email message from the mediator to Brandon's former counsel stating: "[W]e left a couple of things undone." The mediator indicated that there had not been an explicit understanding as to who would be responsible for obtaining "written verifications" confirming Tenille was not on any of Brandon's credit card accounts nor an indication as to which party was responsible for producing the QDRO. The mediator also acknowledged that there was a discrepancy in the balance of the Cabela's credit card.

Brandon obtained new counsel, and a hearing on Tenille's motion was held. At the hearing, Brandon objected to the incorporation of the separation agreement into the district court's divorce decree and asked that it be set aside as it was invalid, unenforceable, and failed to make an equitable distribution of property. Specifically, Brandon argued the separation agreement was unenforceable because there had not been a meeting of the minds regarding the IRA and the Cabela's credit card. Brandon further argued there was nothing in the agreement that made either party responsible for obtaining "written verifications" needed to trigger the transfer of the IRA funds to Brandon, nor was there a delegation of the responsibility for arranging the transfer of the funds via a QDRO or other means. Additionally, Brandon argued there had been no agreement about who would be responsible for the gains and losses that the account may experience during the time between the execution of the agreement and the transfer of the funds. At the time of the hearing in October 2020, the transfer had not yet occurred. The district court inquired further into Brandon's argument at the hearing:

"THE COURT: And so what you are saying is, although there was initially an agreement or a possibility of a meeting of the minds, that since it wasn't agreed upon the timeframe, now that the account has gone up, you feel as though your client should be partially benefitted by that increase in value.

[BRANDON'S COUNSEL]: Correct, Your Honor, if the agreement had been carried out [finally] with, you know, in February or the beginning of March, my client would have had that $32,500.00 into an account in his own name, and he could have experienced the losses and gains on that amount, and had the benefit of those gains since then. That did not happen, and, so, over time that account has gained we think significantly, and he has had no benefit from that because of the timing of this."

Tenille countered that the separation agreement did not call for a percentage division of the IRA; rather, it was an "absolute dollar fixed amount." She argued the amount was agreed to regardless of when the QDRO was filed. Further, she argued any delay in the transfer of funds was not attributable to her. Tenille asserted the triggering mechanism for the transfer of the funds—that written verification be received from Brandon's credit card accounts stating that Tenille was not liable for the debts—was never performed, and even if the language was not specific as to who was to receive that verification, the accounts in question were Brandon's accounts; so if someone other than the account holder were to call, the credit card company would not speak with that person. Tenille also referenced the mediator's email which suggested the mediator adopted the same view: "I would suggest that since Tenille is not on those accounts, it is most likely the credit card companies will not be willing to communicate with her. If that is the case, it would appear to me that [Brandon is] going to have to assume responsibility for that."

After considering the parties' arguments, the district court held that the separation agreement was fair and equitable and would be incorporated into the divorce decree. The district judge stated, "[I]t does not surprise me that based upon the way in which the

6

market has reacted over the course of the last seven months that arguments are being made now that what was initially agreed upon or believed to be agreed upon was fair and equitable, but now that is no longer fair and equitable." However, the district court returned to the question of if there had been a meeting of the minds in February 2020 and concluded there was. In doing so, the district court gave "great credence to the fact that both counsel or both individuals had counsel" and considered that "by having counsel that they have and presumably have spoken with their counsel and they are fully advised as to what their legal rights, duties, and responsibilities would be."

Subsequently, the district court entered a journal entry and decree of divorce that incorporated the separation agreement in its entirety into the divorce decree; found the agreement to be valid, just, and equitable; and left the parties' share of credit card balances and the terms of the IRA allocation unchanged.

Brandon timely appeals.

ANALYSIS

On appeal, Brandon argues that the separation agreement is invalid and unenforceable and that the district court lacked sufficient evidence to determine the agreement was fair, just, and equitable.

I.    IS THE SEPARATION AGREEMENT INVALID AND UNENFORCEABLE?

Brandon advances a two-part argument that the separation agreement is invalid and unenforceable. First, he argues there had not been a meeting of the minds concerning the agreement because it was worded in a way to "make it impossible to trigger the transfer" of the IRA. Second, he argues that because there was a delay in the transfer of the funds, the agreement was not just or equitable. Notably, Brandon fails to include an

7

argument in his brief concerning which party was to prepare the QRDO. Thus, we consider that issue abandoned. See *In re Marriage of Williams*, 307 Kan. 960, 977, 417 P.3d 1033 (2018).

Contract law governs mediated agreements. See *James Colborn Revocable Trust v. Hummon Corporation*, 55 Kan. App. 2d 120, 124, 408 P.3d 987 (2017). We exercise unlimited review over the interpretation and legal effect of written instruments and are not bound by the district court's interpretation of the separation agreement. *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016). Yet, "[t]he determination of the existence of a sufficient meeting of the minds to form the basis for a binding contract is one of fact to be determined by the trier of the facts." *Care Display, Inc. v. Didde-Glaser, Inc.*, 225 Kan. 232, Syl. ¶ 3, 589 P.2d 599 (1979).

An agreement to form a contract in the future is generally not binding unless all essential terms are agreed upon and nothing essential is left to future negotiations. *Mohr v. State Bank of Stanley*, 244 Kan. 555, 572, 770 P.2d 466 (1989). Essential terms include:

> "'identification of the subject matter, the price to be paid, the time of performance, or the work to be done. Missing terms such as price, or the time of delivery or completion, will be supplied where possible by an inference that a reasonable price, or delivery at a reasonable time was intended. However, such an inference is not possible where the offer or agreement attempts to cover these terms and fails to achieve intelligible certainty.'" PIK Civ. 4th 124.04 (2020 Supp.) Comment (quoting Simpson, Handbook on the Law of Contracts [2d ed.] p. 19).

Importantly, "[t]he law favors the compromise and settlement of disputes and when parties enter into an agreement settling and adjusting a dispute neither party is permitted to repudiate it in the absence of fraud, bad faith or mutual mistake of fact. [Citations omitted.]" *Rymph v. Derby Oil Co.*, 211 Kan. 414, 418, 507 P.2d 308 (1973).

To refresh, the language of the separation agreement in dispute states:

> "The sum of $32,500.00 to be set apart to him from the Fidelity [Rollover] IRA subject of paragraph 9[A.b.] The transfer shall be done via a [Qualified Domestic Relations Order (QDRO)], or a simpler means if possible, without incurring fees or taxes. The transfer shall be made as soon as is reasonably possible after it is determined with certainty, with written verification from each creditor, that Tenille is not liable for any of the credit card indebtedness's being assumed by Brandon."

Brandon complains there had been no meeting of the minds because the separation agreement does not specify who is responsible for obtaining the verifications from Brandon's credit card companies. Brandon argues that it was impossible for him to obtain these written verifications and that such impossibility renders the agreement unenforceable. See *Sunflower Electric Co-op., Inc. v. Tomlinson Oil Co.*, 7 Kan. App. 2d 131, 138, 638 P.2d 963 (1981).

We are unconvinced that it was impossible to verify these debts. Contracts must be read with common sense in mind. *In re Marriage of Nelson*, 58 Kan. App. 2d 920, 925, 475 P.3d 1284 (2020) ("[C]ourts should not strain to find an ambiguity where in common sense there is none."). A review of the record indicates that the relevant accounts were only in Brandon's name. Common sense and logic dictate that a financial institution is only going to discuss and disclose the details of an account with the account holder. Tenille, not being on these accounts, was in no position to be able to execute this condition of the separation agreement that triggered the transfer of the IRA funds. Significantly, Brandon fails to cite to any evidence in the record that his creditors "refused to provide" this documentation, as he asserts in his brief. Our review of the record on appeal yields no evidence of any attempts by Brandon to procure this information from his creditors, either successfully or unsuccessfully. As we "may presume that a factual statement made without a reference to volume and page number has no support in the record on appeal," Supreme Court Rule 6.02(a)(4) (2021 Kan. S. Ct.

9

R. 36), Brandon's arguments relating to a lack of the meeting of the minds concerning the separation agreement as it relates to the written verifications of credit card debt are unpersuasive.

Second, we move to Brandon's argument that the delay of the transfer of the IRA funds creates inequity in the separation agreement, making it unenforceable. We reject this argument as well because—as we have already discussed—Brandon, not Tenille, was the individual who could have obtained the required verification that only he was responsible for the debt and there is no indication in the record on appeal that he attempted to do so or that the credit card companies would not provide it to him. He argues that such a verification is impossible to obtain because these verifications "would be akin to the creditor writing to [Brandon] and stating that every other person in the world is not liable for the debt because they had not agreed to be bound by that debt." But the language of the separation agreement does not require such an assurance from the credit card companies. It requires that "it [be] determined with certainty, with written verification from each creditor, that Tenille is not liable for any of the credit card [indebtednesses] being assumed by Brandon." A simple statement that Brandon is the only account owner and the individual responsible for the account would suffice to satisfy this condition precedent. Any delay in the transfer of the IRA funds and the perceived inequities flowing from such delay is attributable to Brandon's delay and/or inaction.

II.    DID SUFFICIENT EVIDENCE SUPPORT THE DISTRICT COURT'S FINDING THAT THE SEPARATION AGREEMENT WAS FAIR, JUST, AND EQUITABLE?

Brandon also argues the district court lacked sufficient evidence to find the separation agreement to be fair, just, and equitable. Without the testimony of either party, without the benefit of domestic relations affidavits, and with only "the allowance of a few minutes of argument about the fairness of the agreement from counsel," Brandon reasons

10

the district court lacked sufficient evidence to determine that the agreement was fair, just, and equitable.

> "When a separation agreement is submitted for court approval, the trial judge is given broad discretion to determine its fairness. *Kirk*, 24 Kan. App. 2d at 35-36. Thus, we review the fairness decision for abuse of discretion. If reasonable people could disagree about the appropriateness of the trial court's decision, then no abuse of discretion has occurred. *In re Marriage of Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006)." *In re Marriage of Takusagawa*, 38 Kan. App. 2d 401, 406, 166 P.3d 440 (2007).

K.S.A. 2020 Supp. 23-2712(a) provides: "If the parties have entered into a separation agreement which the court finds to be valid, just and equitable, the agreement shall be incorporated in the decree." Given the mandate of this statute and its predecessors, "separation agreements have always been subject to the scrutiny of the courts to prevent fraud and oppression." *Spaulding v. Spaulding*, 221 Kan. 574, 577, 561 P.2d 420 (1977).

Tenille argues that because the parties agreed to the deal and the separation agreement contains language that the parties consider the agreement to be just and equitable, the district court need not review more evidence than the agreement. But "mere agreement by the parties does not vitiate the court's duty to scrutinize the settlement agreement, and if the agreement is not valid, just and equitable, the court should reject or alter it." *Cook v. Cook*, 7 Kan. App. 2d 179, 184, 638 P.2d 980, *rev'd on other grounds by* 231 Kan. 391, 646 P.2d 464 (1982).

When conducting such an independent inquiry into the fairness of any separation agreement, our court has emphasized the need for sufficient evidence in the record to support the district court's evaluation. *In re Marriage of Kirk*, 24 Kan. App. 2d 31, Syl. ¶ 1, 941 P.2d 385 (1997). In *Kirk*, the required domestic relations affidavits, which were purportedly filed in the district court, were not included in the record on appeal, and there

was no evidence presented for the value of the husband's and wife's separate businesses. Additionally, no property values were listed in the separation and property settlement agreement. The panel discussed the importance of property values being supplied to the district court in some manner so the district court could adequately review the settlement for fairness:

> "The importance of property values in scrutinizing a separation agreement is emphasized in 1 Elrod, Kansas Family Law Handbook § 11.074D (rev. ed.1990), which recommends that property values be set forth in the separation agreement: 'Each major piece of property, i.e., realty, automobiles, etc., should be listed with its value and which party is to receive the property. The court reviewing the agreement cannot determine if it is just and equitable without knowing the value of the property.'

> "The importance of property values to the district court is also highlighted by two Supreme Court rules which require that the parties to a divorce action supply the district court with pertinent property value information. Rule 164 (1996 Kan. Ct. R. Annot. 172) requires that a Domestic Relations Affidavit be filed in divorce, annulment, and separate maintenance cases. Rule 139 (1996 Kan. Ct. R. Annot. 160) also requires the Domestic Relations Affidavit in the context of requests for support orders, and provides that '[n]o *ex parte* order for support will be issued without this required affidavit.' The prescribed form for the Domestic Relations Affidavit includes sections for detailing the parties' liquid assets, real property, and all other personal property with actual or estimated value included. See *In re Estate of Loughmiller*, 229 Kan. 584, 591, 629 P.2d 156 (1981)." *Kirk*, 24 Kan. App. 2d at 33.

The panel ultimately refused to uphold the district court's approval of the parties' separation agreement based principally on the parties' assent and held that it was an abuse of discretion for the district court to find the separation agreement to be just and equitable without more because there was no evidence in the record to support such a finding. 24 Kan. App. 3d at 35-36; see also *Takusagawa*, 38 Kan. App. 2d at 406 (parties' submission of domestic relations affidavits containing income information and property values sufficient for district court to conduct inquiry into fairness of agreement).

12

Here, like in *Kirk*, neither party submitted a domestic relations affidavit to the district court and neither party testified before the district court regarding their assets and liabilities. Moreover, the parties' separation agreement lacks property values for all the major pieces of property. For example, under the property awarded to Tenille, there is no value listed for the 2008 Hummer H3 and no total value of her retirement accounts (both the IRA at issue herein and her "AUL Retirement Plan"). Under the property awarded to Brandon, there is no value listed for the marital residence or for the numerous vehicles awarded to him (1970 Chevrolet truck, 2003 Jeep Commando, 2009 Chevrolet Silverado, 1954 Chevrolet Coupe, and "[a]ll antique vehicles"). Brandon was also awarded three boats, and no property value is listed for those. The separation agreement does, however, provide specific values for the debts each party is to assume.

Given the lack of evidence concerning the parties' financial situations and the values of the property being divided, we are compelled to hold that the district court's finding that the separation agreement was fair, just, and equitable lacked sufficient evidence and was, therefore, an abuse of discretion. The parties' mere agreement and assertion that the separation agreement was fair, just, and equitable, even with the assistance of counsel, was not enough in the absence of testimony from the parties, domestic relations affidavits, or the listing of the values of the property to be divided in the separation agreement itself. The district court erred by incorporating the separation agreement into the divorce decree. See K.S.A. 2020 Supp. 23-2712(a).

However, our holding should not be construed to indicate that the parties' separation agreement cannot be found to be fair, just, and equitable. Given that we have upheld the district court's finding that the separation agreement is a valid contract, if the district court is supplied with sufficient evidence on remand to allow it to properly evaluate the fairness of the agreement, then it may be incorporated into the divorce decree as provided by K.S.A. 2020 Supp. 23-2712(a).

The district court's finding that the separation agreement is a valid contract is affirmed, but its finding that this same agreement is just and equitable is reversed for insufficient evidence. The case is remanded so the district court may be presented with sufficient evidence to determine the fairness of the separation agreement.

Affirmed in part, reversed in part, and remanded with directions.